A05A0429. MARSHALL v. THE STATE.
A05A0430. KING v. THE STATE.
(614 SE2d 169)

SMITH, Presiding Judge.

Following a joint bench trial, Nick Marshall and Tyrone King filed separate appeals from their convictions for possession of cocaine and marijuana with intent to distribute. We have consolidated the appeals for review. Both Marshall and King challenge the trial court's denial of their motions to suppress. King also raises the sufficiency of the evidence to support his conviction for distributing cocaine and marijuana. Finding no error, we affirm.

1. Marshall and King contend the trial court erred in denying their motions to suppress evidence because the affidavit and the warrant were amended after the warrant issued, and the amendment was not sworn to by the officer presenting the affidavit or signed by the magistrate.

The record shows that after the original warrant was issued, the affiant officer checked his notes and realized that he had made an error in the affidavit regarding the description of the location of the house to be searched: He had described the house as the second house on the right, when actually it was the third house on the right. He spoke with a magistrate, who told him to "come by and change it." After verifying that the house was indeed the third house on the right, the officer brought the original affidavit and warrant to the magistrate, who was not the original issuing magistrate. The magistrate changed the word "second" to "third" in both documents and initialed the change. The officer did not present evidence under oath to the second magistrate, and the second magistrate did not sign the warrant. The officers executed the warrant and found cocaine, marijuana, scales, and baggies.

Marshall and King, who both resided in the house identified in the warrant, were arrested and charged with possession with intent to distribute both cocaine and marijuana. Both Marshall and King argue that their motions to suppress, based upon the initialed change, should have been granted because the officer did not give a written complaint, under oath, regarding the new information, as required by OCGA § 17-5-21 (a). They also argue that the warrant was invalid because the second magistrate received no information under oath and therefore probable cause was not shown before the second magistrate. We do not agree.

(a) We note initially that it is clear from the Georgia Supreme Court's recent holding in *Green v. State*, 275 Ga. 569 (570 SE2d 207) (2002), that an amendment approved by a magistrate other than the issuing magistrate need not invalidate a warrant. The theory "that a second magistrate should not authorize the amendment or alteration of another magistrate's warrant runs contrary to Georgia case law." (Citation and footnote omitted.) Id. at 570. The second magistrate therefore had authority to amend the warrant issued by the first magistrate.

(b) OCGA § 17-5-31 provides: "No search warrant shall be quashed or evidence suppressed because of a technical irregularity not affecting the substantial rights of the accused." The error in the description of the location to be searched was just such a "technical irregularity." The warrant included the residence's complete and correct address, as well as the city where it was located and a physical description of the house: a "green and white . . . single-wide mobile home." The warrant also specified that the residence did not face the street named in its address.

"A description is sufficient if a prudent officer executing the warrant is able to locate the place definitely and with reasonable certainty." (Citation omitted.) *State v. Megdal*, 139 Ga. App. 397, 398 (1) (228 SE2d 333) (1976). King argues that "[i]t is entirely conceivable that the executing officers could and likely would go to the wrong residence." Contrary to King's assertion, however, given the wealth of information provided in the original warrant, we conclude that it is entirely *inconceivable* that executing officers likely would have gone to the wrong house. Changing the word "second" to "third" therefore cannot have affected any substantive rights. The trial court was authorized to find that the changed word was "clearly typographical and . . . not so material as to destroy the integrity of the affidavit or the validity of the warrant." (Citations and punctuation omitted.) *Carlton v. State*, 251 Ga. App. 339, 341 (1) (554 SE2d 318) (2001).

(c) Marshall and King argue that the second magistrate lacked probable cause to support the search warrant because no sworn testimony was taken. This enumeration has no merit.

No question exists that the first magistrate had before him information given under oath that constituted probable cause to issue the warrant. Probable cause did not evaporate simply because a second magistrate corrected an error in one word that we have found inconsequential. Under OCGA § 17-5-31, the technical irregularity and correction did not invalidate the original warrant issued by the first magistrate. Probable cause therefore still existed to support the warrant and its execution. See *Wells v. State*, 196 Ga. App. 133-134 (1) (395 SE2d 296) (1990) (omission of address in body of warrant did not affect validity); *Megdal*, supra, 139 Ga. App. at 398 (1) (warrant still valid even though erroneously described house to be searched as two stories instead of one story). The trial court did not err in denying the motions to suppress.

2. King also contends that the evidence presented at trial was insufficient to support his convictions because no evidence connected either him or Marshall to the illegal substances found in their joint residence and no evidence was presented that he actually sold or otherwise distributed the substances.

(a) As to possession, the evidence was clear. The parties stipulated that the drugs were found under the kitchen sink and behind wall paneling next to the front door. They also stipulated that no one was at the residence other than Marshall and King, and that Marshall and King lived there. This evidence created a rebuttable presumption that King possessed the cocaine and marijuana. *Wilson v. State*, 231 Ga. App. 525, 526-527 (1) (499 SE2d 911) (1998). The presumption was not rebutted, and the trial court was authorized to find that Marshall and King had joint constructive possession of the drugs. Id.

(b) King argues that "[t]he State's only effort to suggest 'distribution' or any 'intent to distribute' the contraband substances was simply the quantities of the substances, the scale, the razor blade and the baggies." He also asserts that no testimony suggested "distributor" as opposed to "user" quantities. His contentions are belied by the record. An additional stipulation was signed by both defendants, their counsel, and the prosecutor. The parties stipulated that an officer of the Southwest Georgia Drug Task Force, if called, would testify based on his training and experience that "the amount of marijuana found under the kitchen sink, . . . and the amount of cocaine found in the wall behind a piece of paneling, . . . were both consistent with an amount that a dealer would possess and were inconsistent with an amount that a typical user would possess." In addition, the parties stipulated that baggies of the type that held the drugs found were discovered in both the kitchen and a bedroom. Scales and a razor blade were found on a table in the living room, and $1,709 was found in a pants pocket in a bedroom.

Mere possession of cocaine, without more, will not support a conviction for possession with intent to distribute. But additional evidence may prove intent to distribute.

> [A] qualified expert may offer opinion testimony regarding his knowledge of the amount of crack cocaine one would generally possess for personal use or the amount which might evidence distribution. Such expert testimony, coupled with evidence of the amount of cocaine found in the defendant's possession, is admissible to prove the defendant's intent to distribute the controlled substance.

(Citation and punctuation omitted.) *Bacon v. State*, 225 Ga. App. 326, 327 (483 SE2d 894) (1997). Additional evidence may also be used to prove the intent to distribute, including the possession by the accused of large amounts of currency. See *Burse v. State*, 232 Ga. App. 729, 730 (1) (503 SE2d 638) (1998). Scales and plastic baggies on the premises have also been held to be indicia of intent to distribute. *Smith v. State*, 226 Ga. App. 150, 151 (2) (485 SE2d 538) (1997). Ample evidence was presented to authorize the trial court to find King guilty of possession with intent to distribute under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. Ellington and Adams, JJ., concur.*

DECIDED APRIL 19, 2005.

*Robert R. McLendon IV*, for appellant (case no. A05A0429).
*Melvin R. Horne*, for appellant (case no. A05A0430).
*J. Brown Moseley, District Attorney, Ronald R. Parker, Assistant District Attorney*, for appellee.