## A10A0487. FYFE v. THE STATE.
## A10A0488. KING v. THE STATE.
(699 SE2d 546)

BERNES, Judge.

Melissa Fyfe and Robert King were jointly indicted, tried, and convicted of trafficking in methamphetamine and misdemeanor possession of marijuana following a jury trial. Both filed motions for a new trial, which the trial court denied. In Case No. A10A0487, Fyfe contends that the trial court erred in overruling her special demurrer to the indictment, that the evidence was insufficient to sustain her trafficking conviction, and that the trial court erred in sentencing her for trafficking rather than possession with intent to distribute. In Case No. A10A0488, King challenges the trial court's denial of his motion for a directed verdict. For the reasons set forth below, we affirm both convictions.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.

(Citation omitted.) *Maldonado v. State*, 293 Ga. App. 356 (667 SE2d 156) (2008).

So viewed, the evidence presented at trial shows that on July 20, 2006, an informant advised officers with the Forsyth County Narcotics Unit that Fyfe had been supplying him with methamphetamine. The informant agreed to cooperate in the officers' drug investigation.

With the assistance of the informant, the officers coordinated a controlled buy at the residence of Fyfe and her boyfriend, King. Prior to the controlled buy, the officers searched the informant and his vehicle, confirming that the informant was not in possession of any contraband. The officers then provided the informant with two $20 bills for use in the drug purchase. The serial numbers of the dollar bills were recorded for identification purposes. The informant drove with an officer to Fyfe's residence, while other officers conducted surveillance.

When the informant arrived at the residence, Fyfe opened the door and allowed him to enter. King was also present in the residence and was sitting at a table in the kitchen. The informant asked Fyfe for a quarter of a gram of methamphetamine, and Fyfe went into the master bedroom to retrieve the drugs. When Fyfe returned with the

drugs, she gave them to the informant in exchange for the cash. The informant returned to his vehicle, and gave the officer the drugs that he had obtained from Fyfe.

Following the controlled buy, the officers obtained a search warrant for the residence. When the officers entered the residence to execute the warrant, Fyfe, King, and three other occupants were present. Fyfe and King were sitting at the kitchen table, while a female occupant was leaning over the table. Two of the other occupants were sitting on the living room sofa. All of the occupants of the residence appeared to be under the influence of methamphetamine; their pupils were dilated and unresponsive to light, they were sweating profusely, and their sweat emanated a chemical odor associated with methamphetamine.

Fyfe, King, and the other occupants of the residence were arrested. After securing the premises, the officers conducted the search. From the kitchen table where Fyfe and King had been seated, the officers seized a box containing digital scales, a mirror lined with methamphetamine, a plastic straw set up to ingest the drugs, a large plastic bag containing several smaller plastic bags commonly used to package illegal drugs, and a calculator. Beside the calculator was a large plastic bag containing additional methamphetamine. On the corner of the table was a black canvas bag, containing more methamphetamine packaged in multiple clear plastic bags. Another plastic bag, a butane lighter, and spoons that could be used to ingest or measure the drugs were also located in the kitchen area. Near the butane lighter was an ashtray and a glass smoking pipe containing methamphetamine residue.

In the master bedroom, the officers discovered a black canvas bag similar to the one found at the kitchen table. The bag contained marijuana and smoking pipes. The cabinets that surrounded the bed also contained rolling papers, a 200-gram weight scale, and additional smoking pipes. Another glass smoking pipe containing suspected methamphetamine residue was also located in the master bedroom.

In Fyfe's purse, the officers found the two $20 bills that the informant had used during the controlled buy.

All of the drug evidence was seized and submitted to the Georgia Bureau of Investigation Crime Lab for testing. Tests showed that approximately 30.15 grams of methamphetamine was seized from the kitchen table. Tests also showed that approximately 21.3 grams of marijuana was seized from the bag in the master bedroom. An officer testified that the amount of methamphetamine seized, the manner in which it was packaged, and the surrounding drug paraphernalia were all indications of drug trafficking and distribution.

YALE LAW LIBRARY

Fyfe, King, and the other occupants of the residence were jointly indicted for trafficking in methamphetamine and possession of methamphetamine with intent to distribute. Fyfe and King also were indicted for misdemeanor possession of marijuana.

Following a jury trial, Fyfe and King were found guilty of the charged offenses. Their respective motions for new trial were denied, and they filed the instant appeals.

### Case No. A10A0487

1. Fyfe contends that the trial court erred in overruling her special demurrer to the indictment. She argues that the indictment failed to sufficiently allege the date of the crimes and failed to sufficiently allege facts distinguishing the quantity of methamphetamine that she allegedly possessed from that possessed by the other co-defendants. We disagree.

> By filing a special demurrer, an accused claims . . . that the charge is imperfect as to form or that the accused is entitled to more information. . . . Under Georgia law, an indictment that "states the offense in the terms and language of (the applicable Code section) or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." OCGA § 17-7-54. The real test, therefore, is not whether the indictment could have been clearer, but whether it states the elements of the offense and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Thus, it is useful to remember that the purpose of the indictment is to allow defendant to prepare his defense intelligently and to protect him from double jeopardy.

(Citations and punctuation omitted.) *State v. Delaby*, 298 Ga. App. 723, 724-725 (681 SE2d 645) (2009).

Count 1 of the indictment charged Fyfe and the co-defendants with trafficking in methamphetamine, providing, in pertinent part, that

> [IN] VIOLATION OF THE GEORGIA CONTROLLED SUBSTANCES ACT (OCGA § 16-13-31 (e)), . . . the said accused on the 20th day of July, 2006, in the County of Forsyth, did knowingly possess more than 28 grams of any

mixture containing Methamphetamine, a Schedule II controlled substance, contrary to the laws of this State[.]

Count 2 of the indictment further charged Fyfe with possession of methamphetamine with intent to distribute, providing that

[IN] VIOLATION OF THE GEORGIA CONTROLLED SUBSTANCES ACT (OCGA § 16-13-30), . . . the said accused on the 20th day of July, 2006, in the County of Forsyth, did possess with the intent to distribute Methamphetamine, a Schedule II controlled substance, . . . contrary to the laws of this State[.]

Contrary to Fyfe's contention, the indictment sufficiently set forth the date of the offenses in that it alleged that the drug offenses occurred "on the 20th day of July, 2006." See *Lyle v. State*, 131 Ga. App. 8, 9 (3) (b) (205 SE2d 126) (1974). The indictment was not required to state the exact time of day to be sufficient. See id.

The indictment was also sufficient to the extent that it tracked the material language of the statutes proscribing the charged offenses. See OCGA §§ 16-13-30 (b), 16-13-31 (e); *Lord v. State*, 235 Ga. 342, 343 (3) (219 SE2d 425) (1975). Fyfe nevertheless argues that the indictment was insufficient in that it failed to distinguish between the methamphetamine possessed by the other co-defendants who had been charged with possession of methamphetamine. Her argument is unavailing. The separate counts against her co-defendants specified that the drugs possessed by those defendants were "not . . . the same Methamphetamine as alleged in any other count of th[e] indictment." Thus, the language set forth in the counts against Fyfe's co-defendants separately designated the drugs upon which those charges were based and made clear that Fyfe's drug charges were not based upon the drugs allegedly possessed by those individual co-defendants.

The indictment was not required to include additional facts specifying the locations where the methamphetamine was found inside the residence. "While the defendant is entitled to know the particular facts constituting the alleged offense to enable him to prepare for trial, it is not necessary for the State to spell out in the [indictment] the evidence on which it relies for a conviction."[1] (Citations, punctuation and footnotes omitted.) *Golden v. State*, 299

---

[1] Significantly, Fyfe had filed written notice of her election to have the criminal discovery provisions of OCGA § 17-16-1 et seq. apply to the case. See OCGA § 17-16-2 (a). Accordingly, further details regarding the state's evidence supporting the charged offenses were available during the exchange of discovery.

Ga. App. 407, 411 (3) (683 SE2d 618) (2009). See also *Watson v. State*, 178 Ga. App. 778, 780 (1) (344 SE2d 667) (1986); *Mell v. State*, 69 Ga. App. 302, 303 (25 SE2d 142) (1943). Because the allegations of the indictment were sufficient to be easily understood by the jury, to allow Fyfe to prepare her defense, and to protect Fyfe from double jeopardy, the trial court's decision overruling Fyfe's special demurrer was authorized. See *Coker v. State*, 185 Ga. App. 103, 103-104 (1) (363 SE2d 356) (1987); *Bostic v. State*, 173 Ga. App. 494, 494-495 (1) (326 SE2d 849) (1985).

2. Fyfe also challenges the sufficiency of the evidence supporting her trafficking in methamphetamine conviction.[2] Fyfe's contention is without merit.

A person commits the offense of trafficking in methamphetamine when he or she knowingly has possession of 28 grams or more of methamphetamine or any mixture containing methamphetamine. See OCGA § 16-13-31 (e). The offense may be committed by mere possession of a trafficking amount. See *Navarro v. State*, 293 Ga. App. 329, 331 (667 SE2d 125) (2008).

> Possession of contraband may be actual or constructive. Moreover, joint constructive possession with another will sustain a conviction for possession of contraband. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons shared actual or constructive possession of a thing, possession is joint.

(Citation omitted.) *Cochran v. State*, 300 Ga. App. 92, 94 (1) (a) (684 SE2d 136) (2009). Because Fyfe and her co-defendants were jointly charged with the trafficking in methamphetamine offense, the state was not required to show that Fyfe was in sole constructive possession of the drugs. See id. Rather, the state could establish Fyfe's guilt

---

[2] Fyfe further contends that the evidence was insufficient to convict her of possession of methamphetamine with intent to distribute, but the trial court merged the possession count into the trafficking count for sentencing purposes. "We need not consider an enumeration of error which addresses the sufficiency of the evidence to convict on a count on which the trial court failed to enter judgment." (Citation and punctuation omitted.) *Cochran v. State*, 300 Ga. App. 92, 94 (1) (a), n. 1 (684 SE2d 136) (2009). Fyfe does not challenge her conviction for misdemeanor possession of marijuana.

of the trafficking offense by showing that Fyfe and her co-defendants were in joint constructive possession of the contraband found at the kitchen table. See id. at 94-95 (1) (a).

"Spatial proximity alone is insufficient to prove joint constructive possession of contraband."(Punctuation and footnote omitted.) *Herberman v. State*, 287 Ga. App. 635, 637 (1) (653 SE2d 74) (2007). And, "[m]ere presence, without proof of participation, is insufficient to support a conviction." (Punctuation and footnote omitted.) Id. at 637-638 (1). But,

> [b]eyond a defendant's spatial proximity to the drugs, constructive possession may be shown by demonstrating the defendant knowingly had both the power and intention at a given time to exercise control over the substance. Power may be inferred from access to the drugs, while the matter of intent may be derived from the surrounding circumstances.

(Citation omitted.) *Maldonado*, 293 Ga. App. at 357 (1); *Castillo v. State*, 288 Ga. App. 828, 830 (655 SE2d 695) (2007). "[W]hen a constructive possession case is based wholly on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." (Punctuation and footnote omitted.) *Herberman*, 287 Ga. App. at 637-638 (1). Generally, whether a hypothesis is reasonable is a question to be decided by the jury. See *Vines v. State*, 296 Ga. App. 543, 546 (1) (675 SE2d 260) (2009).

Here, the evidence was sufficient to show more than Fyfe's mere presence and spatial proximity to the methamphetamine drugs located at the kitchen table. The evidence established that Fyfe and her boyfriend, King, lived at the residence where the drugs were found. This evidence created a rebuttable presumption that Fyfe and King had joint possession of the drugs. See *Marshall v. State*, 273 Ga. App. 17, 19 (2) (a) (614 SE2d 169) (2005); *Love v. State*, 227 Ga. App. 772, 773 (490 SE2d 527) (1997). The presumption was not rebutted by the evidence in this case. Following the controlled buy in which Fyfe participated, the officers entered the residence to execute a search warrant and observed Fyfe sitting at the kitchen table, with a plastic bag containing a large amount of methamphetamine and a mirror lined with methamphetamine in plain view and within her reach. A plastic straw set up to ingest the drugs, a box containing digital scales, a large plastic bag containing several smaller bags commonly used to package illegal drugs, and a calculator were also located at the kitchen table. On the corner of the table was a black

canvas bag that was half open, containing multiple clear plastic bags of suspected methamphetamine. Several other forms of drug paraphernalia commonly used to ingest or measure the drugs were also located in the kitchen area. All of the methamphetamine seized from the kitchen area where Fyfe had been seated collectively weighed approximately 30.15 grams.[3] An officer testified that the amount of methamphetamine, combined with the packaging materials and drug paraphernalia, was indicative of drug trafficking and distribution.

The jury was also authorized to find that Fyfe had knowing possession of the drugs based upon evidence that she had sold methamphetamine to the informant during the controlled buy and that the $40 used to make the drug purchase was located during the subsequent search of her purse. Additionally, two other individuals who had been arrested at the residence testified at trial that Fyfe had supplied them with methamphetamine.

Based upon these circumstances, the jury was authorized to find Fyfe guilty of trafficking in methamphetamine beyond a reasonable doubt. See OCGA § 16-13-31 (e); *Maldonado*, 293 Ga. App. at 356-357 (1); *Castillo*, 288 Ga. App. at 830. See also *Vines*, 296 Ga. App. at 546 (1) (concluding that defendant's joint constructive possession of the drugs was established based upon the evidence, including his joint living arrangement with his co-defendants and the fact that he was within arm's reach of the backpack where the drugs were found).

3. Lastly, Fyfe argues that the trial court erred in failing to apply the rule of lenity, which she contends would have allowed her to be sentenced to the lesser offense of possession of methamphetamine with intent to distribute rather than trafficking in methamphetamine. Fyfe's claim of error was decided adversely to her in our recent decision of *Poole v. State*, 302 Ga. App. 464, 466 (2) (691 SE2d 317) (2010). Because both of Fyfe's offenses are classified as felonies, the rule of lenity did not apply. See OCGA §§ 16-13-30 (d), 16-13-31 (e) (1); *Poole*, 302 Ga. App. at 466 (2).

---

[3] Fyfe raises the same issue presented in her special demurrer claim, arguing that the evidence supporting the trafficking conviction was insufficient since the indictment failed to designate the quantities of methamphetamine that she allegedly possessed, so as to distinguish it from all of the other methamphetamine that was discovered at the residence. But as explained above, the evidence established that Fyfe was in joint possession of all of the methamphetamine at the kitchen table where she had been sitting, which collectively weighed 30.15 grams.

## Case No. A10A0488

4. King contends that the trial court erred in denying his motion for a directed verdict on the trafficking charge.[4] He argues that the evidence was insufficient to authorize his conviction since it merely showed his presence at the residence and his spatial proximity to the drugs at the kitchen table. He further argues that the evidence failed to show that he had knowing possession of the methamphetamine located in the black canvas bag. We disagree and affirm King's conviction.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard, we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In doing so, we neither weigh the evidence nor judge the credibility of the witnesses. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Navarro*, 293 Ga. App. at 329.

As previously stated, King was jointly indicted with Fyfe and three other occupants of the residence for the trafficking in methamphetamine offense. Accordingly, the state could establish King's guilt of the offense by showing that he and his co-defendants were in joint constructive possession of the contraband. See *Cochran*, 300 Ga. App. at 94-95 (1) (a). The principles of law governing Fyfe's challenge to the sufficiency of the evidence, as set forth in Division 2 above, likewise apply to King's claim of error.

Based upon the circumstantial evidence presented, the jury was authorized to find that King was in joint constructive possession of the methamphetamine located at the kitchen table where he had been sitting. The evidence established that King lived at the residence with Fyfe, that he was present at the time of the controlled buy, and that he had access to the drugs that were seized from the kitchen table. When the officers entered the residence to execute the search warrant, King was sitting with Fyfe at the kitchen table,

---

[4] In his appellate brief, King argues that his challenge is to the "methamphetamine-related" convictions, but our review is limited to the trafficking conviction since the possession charge was merged for sentencing purposes. See *Cochran*, 300 Ga. App. at 94 (1) (a), n. 1. King does not challenge his conviction for misdemeanor possession of marijuana.

where a large bag of methamphetamine, a mirror lined with methamphetamine, drug paraphernalia, and small bags for drug packaging were in plain view and within arm's reach. The drugs at the kitchen table had a combined weight of 30.15 grams. Moreover, King's access to the drugs was established by evidence that he exhibited signs of being under the influence of methamphetamine at the time of his arrest.[5] Based upon these circumstances, the jury was authorized to infer that King maintained joint constructive possession of the methamphetamine and was guilty of trafficking in methamphetamine. See *Maldonado*, 293 Ga. App. at 356-357 (1), (2); *Castillo*, 288 Ga. App. at 830; *Herberman*, 287 Ga. App. at 637-638 (1). See also *Vines*, 296 Ga. App. at 546 (1); *Marshall*, 273 Ga. App. at 19 (2) (a).

*Judgments affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED JULY 7, 2010 —
RECONSIDERATION DENIED JULY 21, 2010 — 

*Banks & Stubbs, Rafe Banks III*, for appellant (case no. A10A0487).

*Mary Erickson*, for appellant (case no. A10A0488).

*Penny A. Penn, District Attorney, James A. Dunn, Assistant District Attorney*, for appellee.

---

[5] King cites to *Ridgeway v. State*, 187 Ga. App. 381 (370 SE2d 216) (1988), in support of his claim that his conviction must be reversed. But, *Ridgeway* is factually distinguishable. In *Ridgeway*, this Court reversed the defendant's drug conviction, concluding that although the defendant had keys to the apartment where the drug evidence was found, the evidence was insufficient to establish that he resided at the apartment or that there was a connection between him and the drugs that were seized from the kitchen and bedroom areas. Id. at 382-383. Here, however, there was evidence that King lived at the residence with Fyfe, giving rise to a presumption that he had joint possession of the drugs located there. See *Marshall*, 273 Ga. App. at 19 (2) (a); *Love*, 227 Ga. App. at 773. And, the presumption was not rebutted by the evidence in this case. Although there was no evidence that King participated in the controlled buy with the informant and the methamphetamine contained in the black canvas bag was not in plain view, the circumstantial evidence set forth above otherwise established his joint constructive possession and access to the drugs.