## S13A0268. STACEY v. THE STATE.
(741 SE2d 881)

THOMPSON, Presiding Justice.

Appellant Dominic Trent Stacey was convicted and sentenced for malice murder, theft by receiving, possession of cocaine, and other crimes following the shooting death of Andrew Gibby.[1] He appeals, asserting, inter alia, the evidence was insufficient to support the convictions for theft by receiving and possession of cocaine. We find the evidence sufficient to affirm the conviction for possession of cocaine but reverse the conviction for theft by receiving.

On the evening of November 13, 2006, Stacey and his roommate, Joseph DeDeaux, attempted to hijack a car. Their target was Andrew Gibby, a local drug dealer who drove an Oldsmobile Cutlass with white, 22-inch, rims. DeDeaux arranged to buy marijuana from Gibby in a grocery store parking lot near Stacey and DeDeaux's

---

[1] The crimes were committed on or about November 13, 2006. Appellant was indicted with co-defendant Joseph DeDeaux on December 19, 2007 and charged with malice murder, felony murder, two counts of aggravated assault, two counts of possession of a firearm during commission of a felony, theft by receiving, possession of cocaine, and criminal attempt to commit armed robbery. A jury trial was held in July 2009, and appellant was found guilty of malice murder, felony murder, aggravated assault (of Daniel Smith), two counts of possession of a firearm during the commission of a crime, theft by receiving, and possession of cocaine. Appellant was found not guilty of criminal attempt and of the aggravated assault of Gibby. The trial court sentenced appellant to life in prison for malice murder, and consecutive terms for the other convictions, except felony murder which was vacated by operation of law. See *Malcolm v. State,* 263 Ga. 369 (434 SE2d 479) (1993). Appellant's timely motion for a new trial was denied on August 1, 2012, and appellant filed a notice of appeal on August 9, 2012. The appeal was docketed in this Court for the January 2013 term and submitted for a decision on the briefs.

apartment. Gibby arrived in his Oldsmobile with a friend, Daniel Smith; Stacey and DeDeaux approached the car wearing hooded sweatshirts. During the drug transaction, Stacey pulled a gun and opened fire on Gibby and Smith. Gibby died from five shots to the head, neck, and torso; Smith was injured by a shot to his shoulder. Gibby's car accelerated forward and crashed while Stacey and DeDeaux fled the scene on foot.

Earlier on the night of the murder, Stacey and DeDeaux visited a neighbors' apartment and displayed a newly acquired nine-millimeter Ruger pistol. Stacey and DeDeaux attempted to buy accessories for the gun, discussed hijacking someone in an Olds-mobile Cutlass with 22-inch rims, and asked for information on nearby "chop shops" where they could take a stolen car. The day after the murder, Stacey and DeDeaux again met with their neighbors. Stacey admitted to the shooting and said the attempted hijacking "went real bad." The neighbors later told Ronnie Barnes, a friend of Daniel Gibby, about their conversations with Stacey and DeDeaux and encouraged Barnes to call the police.

Officers executed a no-knock search warrant on the evening of November 14, 2006, and arrested Stacey and DeDeaux in their residence. The officers discovered the stolen nine-millimeter Ruger pistol that Stacey used to shoot Gibby and Smith, an accompanying magazine for the pistol, crack cocaine, and other drug paraphernalia in Stacey and DeDeaux's shared bedroom. The gun was reported stolen several weeks prior to the murder. The officers found the gun under DeDeaux's mattress and the magazine was next to Stacey's mattress. Stacey was lying on his mattress. The cocaine was "directly off the edge of [Stacey's] mattress . . . within less than a foot of his body." Stacey admitted to the shooting in his police interview, but asserted self-defense.

1. Stacey concedes the evidence was sufficient to sustain his convictions for murder, aggravated assault, and possession of a fire-arm, and this Court agrees. At issue is Stacey's contention that the evidence was insufficient to sustain his convictions for theft by receiving or possession of cocaine. To evaluate this evidence, we must review it in a light most favorable to the verdict and defer to the factfinder's assessment of its weight and credibility. *Jackson v. Virginia*, 443 U. S. 307, 326 (99 SCt 2781, 61 LE2d 560) (1979). Viewed in this manner, we find the evidence was (a) sufficient to sustain Stacey's conviction for possession of cocaine, but (b) insufficient to sustain his conviction for theft by receiving.

(a) Although police observed Stacey lying on his mattress with the crack cocaine in reach, a finding of constructive possession must

be based upon some connection between defendant and the contraband other than mere spatial proximity. *Brown v. State*, 244 Ga. App. 440, 442 (2) (535 SE2d 785) (2000). Stacey lived with DeDeaux in the bedroom where the cocaine was found, creating a rebuttable presumption that they had joint possession of the drugs. See *Fyfe v. State*, 305 Ga. App. 322 (699 SE2d 546) (2010) (living in a residence where drugs are found creates a rebuttable presumption of possession); see also *Marshall v. State*, 273 Ga. App. 17, 19 (2) (a) (614 SE2d 169) (2005). Stacey did not rebut that presumption at trial.

On the contrary, Stacey admitted he was aware that DeDeaux sold drugs, and witnesses testified to Stacey's drug use. Moreover, the gun Stacey used in the drug-related murder of Gibby and other drug paraphernalia were found near the cocaine in Stacey and DeDeaux's room. See *Moody v. State*, 232 Ga. App. 499 (502 SE2d 323) (1998) (circumstantial evidence of constructive possession of drugs included presence of a pistol in plain view). Viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient to prove Stacey possessed the cocaine.

(b) A person commits theft by receiving when he receives, disposes of, or retains stolen property which he knows or should know is stolen. OCGA § 16-8-7. " '[B]ecause of its very nature, this crime is one that is usually proved in whole or in part by circumstantial evidence.' " *Martin v. State*, 300 Ga. App. 39, 40 (684 SE2d 111) (2009). Stacey admitted he shot Gibby and Smith with the Ruger pistol in question, which was reported stolen several weeks prior to the murder. At issue is whether Stacey knew or should have known the gun was stolen when he received and used it. Knowledge that property is stolen " 'may be inferred from circumstances, when the circumstances would excite suspicion in the minds of ordinarily prudent persons.' " Id.

Knowledge that a gun was stolen cannot be inferred even when the defendant bought a gun on the street at a reduced price, *Rainly v. State*, 307 Ga. App. 467 (705 SE2d 246) (2010); *Thomas v. State*, 270 Ga. App. 181 (606 SE2d 275) (2004), or when the gun was labeled for law enforcement use. *White v. State*, 283 Ga. 566 (662 SE2d 131) (2008). Here there is only evidence that Stacey and DeDeaux found a gun that had been reported stolen, which is insufficient. Accordingly, we reverse Stacey's conviction for theft by receiving.

2. Stacey contends the trial court erred in giving and failing to give certain instructions to the jury, including a charge on impeachment. However, Stacey made no requests to charge, and raised no objections, at the charge conference. Failure to object to a jury charge precludes appellate review unless the charge constitutes plain error. OCGA § 17-8-58.

This Court employs a four prong test to determine whether plain error occurred: (1) there must be a legal error that is not affirmatively waived; (2) the error must be clear or obvious; (3) the error must affect the outcome of the trial court proceeding; and (4) the error must "seriously affect[ ] the fairness, integrity or public reputation of a judicial proceeding." (Punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 32-33 (718 SE2d 232) (2011).

None of the jury charges at issue were plain error because they did not constitute clear or obvious error and they did not affect the outcome of the trial. As for the trial court's charge on impeachment, we note that an "unauthorized charge on an unavailable method of impeachment is generally harmless error" and a conviction "will not be reversed when it is highly probable that an erroneous jury instruction did not contribute to the verdict." *Francis v. State*, 266 Ga. 69, 72 (463 SE2d 859) (1995) (quoting *Hill v. State*, 155 Ga. App. 718, 719 (1) (272 SE2d 508) (1980)).

3. Stacey contends the trial court erred in rejecting his *Batson* claim alleging discriminatory use of peremptory strikes to exclude prospective jurors. See generally *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986). A *Batson* claim requires three steps:

(1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.

*Thomas v. State*, 274 Ga. 156, 161 (549 SE2d 359) (2001); *Stokes v. State*, 289 Ga. 702, 704, n. 2 (715 SE2d 81) (2011). The first step is not particularly onerous; it requires only evidence sufficient for the trial judge to draw an inference of discrimination. *Pierce v. State*, 286 Ga. 194, 199 (686 SE2d 656) (2009). Here, the State used nine of its ten peremptory strikes against non-white prospective jurors[2] and the trial court determined the necessary prima facie showing was met.

(a) "[T]o carry the burden of production at step two, the proponent of the strike need not offer an explanation that is 'concrete,'

---

[2] There is a factual dispute over the race of the potential jurors in question. Stacey argued during jury selection that nine individuals struck by the State were African-American. The State argued that eight were African-American and the ninth, Mr. Swanson, listed his race as "other." The trial court agreed with the State and found that Mr. Swanson "indicated in the questionnaire that he is other than black or white."

'tangible,' or 'specific.' The explanation need not even be 'case-related.' The explanation for the strike only needs to be facially race-neutral." *Toomer v. State*, 292 Ga. 49, 54 (734 SE2d 333) (2012). Explanations are race-neutral when based on personal experience of the venireman in question rather than a "characteristic or stereotype peculiar to any race." *Thomas v. State*, supra, 274 Ga. at 161. Seven of the potential jurors had personal experiences which the prosecutor believed would render them unsuitable. Juror Pringle worked for a group home with teenage boys close in age to the defendant; juror Tate was a social worker; juror Johnson had multiple conflicts with the criminal justice system; juror Sesay was a cab driver who was overly cautious about crime and may have blamed the victim, a drug-dealer, for the shooting; juror Pedro had been falsely accused of a crime but acted in self-defense, the same legal theory Stacey advanced at trial; juror Swanson was the same age as defendant and exhibited a cavalier attitude toward marijuana use. Additionally, the State was concerned that juror Stevenson may be sympathetic to Stacey, whom she said looked like her son. The potential for a member of the venire to identify defendant with their own children is sufficient to justify a peremptory strike. See *Scott v. State*, 225 Ga. App. 729, 730 (484 SE2d 780) (1997) ("It is clear that . . . the ages of the prospective juror's children can justify the State's exercise of a peremptory strike."); *Ledford v. State*, 207 Ga. App. 705 (429 SE2d 124) (1993) (upholding strikes when the prospective jurors had sons the same age as the defendant); *Nobles v. State*, 201 Ga. App. 483, 488 (411 SE2d 294) (1991) (upholding a strike when the prospective juror said the defendant "reminded her of her young grandson").

(b) "[B]oth the United States Supreme Court and this Court have squarely held that a peremptory strike based upon a juror's demeanor during voir dire may be race-neutral at *Batson* step two." *Toomer v. State*, supra, 292 Ga. at 54. The prosecutor based two peremptory strikes upon the potential jurors' demeanors. Juror Waddy exhibited defensive body language and facial expressions toward the State. See *Arrington v. State*, 286 Ga. 335, 340 (687 SE2d 438) (2009) (body language and facial expressions constitute race-neutral explanations for a peremptory strike). Juror Ross was very defensive and "almost hostile" with the prosecutors. See *Duffie v. State*, 301 Ga. App. 607, 611 (688 SE2d 389) (2009) ("It is well established that perceived hostility toward the State and, conversely, perceived favoritism toward the defendant, constitute race-neutral reasons for striking a prospective juror.").

Given the State's explanations, we agree with the trial court that the State provided sufficient race-neutral explanations for its use of peremptory strikes.

4. Stacey contends the State improperly questioned a police officer about Stacey's credibility and improperly cross-examined him by asking inappropriate questions. However, as he conceded in his brief, Stacey's trial counsel did not object to these questions at trial. Georgia "has long followed the contemporaneous objection rule, which provides that counsel must make a proper objection on the record at the earliest possible time to preserve for review the point of error." *State v. Larocque*, 268 Ga. 352, 353 (489 SE2d 806) (1997). Because contemporaneous objections were not raised below, these grounds present nothing for our review. Stacey's description of the State's conduct as "improper" is irrelevant. We have long held that the "contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct." *Spencer v. State*, 260 Ga. 640, 646 (9) (398 SE2d 179) (1990); see also *Watson v. State*, 278 Ga. 763, 775 (604 SE2d 804) (2004).

5. Stacey next argues that he received ineffective assistance of counsel because his trial lawyer failed to object to the State's questions discussed in Division 4, supra. However, Stacey's first appellate counsel did not raise these issues at the motion for new trial or prior to the docketing of this appeal in this Court. Cf. *Lewis v. State*, 291 Ga. 273 (731 SE2d 51) (2012). Claims of ineffective assistance of trial counsel must be raised before appeal if possible. Id. at 281. A motion for new trial represents such an opportunity, and "failure to seize that opportunity is a procedural bar to raising the issue at a later time." (citation and punctuation omitted.) Id. Although Stacey's second appellate counsel now attempts to raise these claims on appeal, "[o]nce a claim is procedurally barred, there is nothing for this Court to review. To hold otherwise would eviscerate the rule requiring that ineffectiveness claims be raised at the earliest practicable moment." (Citation and punctuation omitted.) *Wilson v. State*, 286 Ga. 141, 144 (686 SE2d 104) (2009). It follows that Stacey's claims of ineffective assistance of counsel are procedurally barred and cannot be properly considered by this Court.

6. Lastly, Stacey argues that the trial court erred in denying his *Jackson-Denno* motion in which he sought to exclude inculpatory statements made during his police interview. In this regard, Stacey asserts he was denied his right to an attorney. "[F]ollowing a *Jackson v. Denno* hearing, this Court will not disturb the trial court's factual and credibility determinations unless they are clearly erroneous." *Wright v. State*, 285 Ga. 428, 432 (677 SE2d 82) (2009). The trial court's denial of the *Jackson-Denno* motion was not clearly erroneous.

At the *Jackson-Denno* hearing, the trial court viewed videotape of the police interview and heard testimony from Stacey and the police officers present at the interview. The officers took multiple steps to ensure Stacey was aware of his rights during the interview. Stacey was given a form stating his *Miranda* rights, he read the rights back to the officers and signed his initials on the form. While reading his *Miranda* rights, Stacey asked, "So I can have an attorney?" The officers interpreted this inquiry as a question regarding Stacey's rights rather than a request for an attorney at that time. One of the officers then read the waiver of rights section of the form, and Stacey signed the waiver. The interview continued without an attorney present.

A defendant must make a request for counsel "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U. S. 452, 459 (114 SCt 2350, 129 LE2d 362) (1994). Reviewing the transcript of the hearing and the videotape of the interview, we agree with the trial court that the remark at issue was not a clear request for an attorney to be present and that Stacey sufficiently understood his rights.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED APRIL 29, 2013.

*Stanley W. Schoolcraft III, John W. Kraus*, for appellant.

*Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.