At the time the trial court considered Oh's motion to suppress (and at the time Oh filed his notice of appeal in this case), the Supreme Court had not yet issued its decision in Olevik v. State , 302 Ga. 228, 806 S.E.2d 505 (2017).[5] In Olevik , the Supreme Court determined that a breath test provided by a DUI suspect after having been read the age-appropriate Georgia implied consent warning was not subject to analysis under the Fourth Amendment but was rather subject to a self-incrimination analysis under the Fifth Amendment and Article I, Section I, Paragraph XVI of the Georgia Constitution. Id . at 232-46 (2), 806 S.E.2d 505. Under that provision of the Georgia Constitution, a suspect in these circumstances is protected from compelled acts of self incrimination, which includes protection against being compelled to submit to a breath test given after receiving the implied consent warning. Id . Thus, a defendant has a constitutional right to refuse such testing. Id . at 246 (2), 806 S.E.2d 505.
As the Supreme Court went on to discuss on Olevik ,
whether a defendant is compelled to provide self-incriminating evidence in violation of Paragraph XVI is determined under the totality of the circumstances. Determining the voluntariness of (or lack of compulsion surrounding) a defendant's incriminating statement or act involves considerations similar to those employed in determining whether a defendant voluntarily consented to a search. We have said that the voluntariness of a consent to search is determined by such factors as the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused.
In determining voluntariness, no single factor is controlling. Just as the voluntariness of consent to search includes an assessment of the psychological impact of all the factors on a defendant, a significant factor in a due process inquiry is whether a deceptive police practice caused a defendant to confess or provide an incriminating statement. And although knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.
Olevik , 302 Ga. at 251-52 (3) (b), 806 S.E.2d 505.
Critical to the matter before us, the Supreme Court also noted that "the relevant factors [used] to determine the voluntariness to consent to search, are [the same factors]
*102 used in determining whether an incriminating act or statement was voluntary." Id . at 252 (3) (b), 806 S.E.2d 505. Thus, even though the trial court in Olevik had analyzed the suspect's alleged consent to a breath test under a Fourth Amendment voluntariness of consent to search standard, the same factors were to be applied in determining whether an incriminating act was made voluntarily. Id . Thus, in this case, although the presentation of evidence by the State and Oh (and the trial court's consideration of it) was made under the Fourth Amendment rubric announced by the Supreme Court in Williams v. State , 296 Ga. 817, 771 S.E.2d 373 (2015), we are not precluded from reviewing the trial court's determinations as to the voluntariness of Oh's act of submitting to the breath test because the trial court would have applied the same factors in its analysis had it been aware that challenges to the breath test are properly considered under Olevik rather than Williams .
We turn, then, to a de novo review of the trial court's determination that Oh's act of submitting to the breath test was voluntary. Depol , 336 Ga. App. at 192, 784 S.E.2d 51. In this case, Oh suggests he was confused by the language of the implied consent warning, noting that he asked the officer to read it multiple times. He also noted that the officer became frustrated with him and that the officer "emphatically and sternly told [Oh] that he was stalling." Oh argues that the officer's statements pressured him to supply a yes or no answer to the officer's question as to whether he would consent to testing. Oh contends that his questions and failure to provide a direct response should have been construed as a refusal to consent. Oh also argues that the presence of a backup officer intimidated him during the time he was determining how to respond to the consent warning.
Under the factors set forth in Olevik , we disagree with Oh that the facts surrounding his response to the consent warning indicate his consent to testing was not voluntarily given. Oh was 24 years old when this incident occurred, and the officer observed that, in light of the roadside conversation he had with Oh that evening, Oh appeared to be a person of at least average intelligence. The traffic stop lasted just under 40 minutes, which in light of the number of tasks performed by the officer, did not appear to be unreasonable or needlessly extended at any point. Oh was never physically punished or threatened with violence, and we agree with the trial court's observation that nothing in the record, including our review of the dashcam video of the stop, supports an inference that Oh suffered any sort of negative psychological impact as a consequence of the DUI stop and the officer's on-site investigation, including any influence the presence of backup officers may have had on his decision-making.
Moreover, despite Oh's argument to the contrary, the officer made no effort to deceive Oh into consenting to the test and, in fact, went to some length to clarify Oh's choice in the matter, including reading the consent warning to him twice. The officer clarified that the warning called for a "yes or no" answer to the "will you submit" question. The video of the incident also indicates that the officer did not raise his voice to Oh, remaining calm and professional with Oh throughout their discussion regarding Oh's response to the consent warning. Moreover, although Oh's questions are consistent with his claim on appeal that he did not initially understand the consent warning, his later consent to testing after the officer's repeated reading of the warning and truthful answers to Oh's questions leads us to reject this argument. The choice before Oh may have been an unpleasant one, but the record does not support an inference that he did not understand what he was being asked to decide or that he was pressured into consenting to the test.
Therefore, in light of the totality of the factors considered above, we agree with the trial court that Oh's consent to the breath test following the implied consent warning was voluntarily given. See State v. Council , 343 Ga. App. 583, 586, 807 S.E.2d 504 (2017) (consent given voluntarily when, among other factors, officer read consent warning multiple times, patiently and calmly answered suspect's questions, and suspect appeared to understand and respond to questions). The *103 trial court did not err in denying Oh's motion to suppress. Accordingly, we affirm his conviction.
Judgment affirmed.
Ellington, P.J., and Senior Appellate Judge Herbert E. Phipps, concur.

The trial court's order denying Oh's motion to suppress was issued on March 17, 2017. Oh's notice of appeal was filed on May 11, 2017. Olevik was issued by the Supreme Court on October 16, 2017.