**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**August 29, 2018**

# In the Court of Appeals of Georgia

A18A1067. GELZER v. THE STATE.

RAY, Judge.

Irving Gelzer was charged with driving under the influence while operating a commercial vehicle (OCGA § 40-6-391 (i)) and driving with a suspended license (OCGA § 40-5-121). We granted Gelzer's application for interlocutory review of the trial court's denial of his motion to suppress the results of a breath test. On appeal, Gelzer argues that the results of his breath test should have been suppressed because the arresting officer provided him with an improper implied consent notice. For the following reasons, we vacate the trial court's order and remand the case for further consideration.

On appeal from the trial court's ruling on a motion to suppress, we construe the evidence in a light most favorable to uphold the ruling of the trial court. *State v.*

*Fedrick*, 329 Ga. App. 75, 76 (2) (763 SE2d 739) (2014). "However, where the evidence is uncontroverted and there is no issue regarding witness credibility, we review the trial court's ruling to ensure that there was a substantial basis for it. The trial court's application of the law to undisputed facts is subject to a de novo review." (Citations and punctuation omitted.) Id.

The evidence presented at the motion to suppress hearing shows that on December 3, 2015, an officer with the Douglasville Police Department responded to a call that a truck had caused damage to property at a Texaco gas station. The officer's initial investigation revealed that a tractor-trailer had hit a metal pole protecting the gas pumps. The officer found Gelzer in the driver's seat of the vehicle and smelled alcohol coming from within the cab of the vehicle. Gelzer told the officer that he had been driving the tractor-trailer, and the officer smelled alcohol on Gelzer's breath when he spoke. The officer further noticed that Gelzer struggled to lower himself from his truck, stumbled while walking, did not seem steady on his feet, slurred his speech, and had red, watery eyes. Based on these manifestations, the officer assumed that Gelzer had been drinking.

When the officer asked for Gelzer's driver's license, Gelzer indicated that he had a commercial driver's license ("CDL"). However, when the officer ran Gelzer's

2

driver's license through dispatch, it was revealed that Gelzer did not have a CDL and that his Florida driver's license was suspended. The officer testified that he did not ask Gelzer to perform field sobriety tests because Gelzer was exhibiting anxious behavior and had walked away from him a few times, and because the officer was afraid that he was going to run away. Based on his belief that Gelzer was under the influence of alcohol, the officer placed Gelzer under arrest for driving under the influence while driving a commercial vehicle and for driving with a suspended license. The officer then read Gelzer Georgia's Implied Consent Notice for suspects who are age 21 and over. Gelzer agreed to submit to a State-administered breath test, and the results of the test indicated that he had a blood-alcohol concentration of 0.198 grams.

OCGA § 40-5-67.1[1] provides different implied-consent notices to be given to drivers under the age of 21, drivers age 21 or over, and commercial motor vehicle driver suspects. OCGA § 40-5-67.1 (b) (1) - (3). The notice for drivers 21 years or over provides, in relevant part, that a suspect's Georgia driver's license or privilege to drive on the highways of Georgia may be suspended for a minimum of one year if

---

[1] OCGA § 40-5-67.1 was amended, effective July 1, 2017. See Laws 2016, Act 408, §1-4. We apply the version of the statute effective at the time of Gelzer's offense. See Laws 2011, Act 89, §9, effective January 1, 2012.

3

the suspect either refuses chemical testing or the testing reports a blood alcohol content of 0.08 grams or more. OCGA § 40-5-67.1 (b) (2). The notice for commercial vehicle drivers provides, in relevant part, that a suspect's right to operate a commercial vehicle will be suspended for a minimum of one year if the suspect either refuses chemical testing or the testing reports a blood alcohol content of 0.04 grams or more. OCGA § 40-5-67.1 (b) (3). It is essentially stipulated by the parties in their briefs to this Court that the arresting officer should have provided Gelzer with the implied consent notice for commercial vehicle driver suspects. [2]

1. In denying Gelzer's motion to suppress the breath test results, the trial court found that the difference between the implied consent warning for suspects age 21 or over and the implied consent warning for commercial vehicle drivers was "within the range of substantial compliance and did not render the warning insufficiently accurate." We disagree.

OCGA § 40-5-67.1 (b) provides that the appropriate implied consent notice "shall be read in its entirety but need not be read exactly so long as the substance of

---

[2] An interesting point, though not raised or argued by the parties, is that the defendant had no commercial driver's license which could have been suspended due to the defendant's either refusal to submit to chemical testifying or to testing which showed an alcohol concentration of .04 grams or more.

4

the notice remains unchanged." OCGA § 40-5-67.1 (b). The "purpose of the implied consent law is to notify drivers of their rights so that they can make informed decisions." *Kitchens v. State*, 258 Ga. App. 411, 413 (1) (574 SE2d 451) (2002). Accordingly, we must now determine "whether the notice given was substantively accurate so as to permit the driver to make an informed decision about whether to consent to testing." (Citation omitted.) Id.

"This [C]ourt has previously recognized that overstatement, as opposed to understatement, of the legal limit of blood alcohol concentration is the type of misinformation that might cause someone to submit to testing who might otherwise refuse." (Citation omitted.) *Kitchens*, supra at 413-414 (1). In *Kitchens*, supra, this Court concluded that the arresting officer substantially altered the substance of the implied consent notice by overstating the legal limit of blood alcohol concentration to be 10 grams instead of 0.10 grams. Id. See also *State v. Terry*, 236 Ga. App. 248, 249-250 (511 SE2d 608) (1999) (affirming the suppression of evidence of a driver's refusal to take a blood test where police falsely informed her that obtaining bond was a pre-condition to independent testing. The misinformation was confusing and could have affected the driver's decision to refuse testing). Compare *Maurer v. State*, 240 Ga. App. 145, 147 (2) (525 SE2d 104) (1999) (an understatement of the legal limit

5

of alcohol concentration did not change the substance of the implied consent notice to a driver who consented to a breath test. An understatement would induce a driver to withdraw consent; however, a suspect "might be led to submit to testing if the legal limit were overstated").

In the instant case, the arresting officer read the wrong implied consent notice and *overstated* the blood alcohol concentration that may result in the revocation of Gelzer's license. As noted in *Kitchens*, supra, and *Maurer*, supra, the arresting officer's overstatement of the blood alcohol concentration affects the substance of the implied consent notice because a suspect might be led to submit to testing if the legal limit were overstated. Accordingly, we conclude that the trial court erred in concluding that the difference between the 0.08 legal limit applicable to suspects age 21 and over and the 0.04 legal limit applicable to commercial vehicle drivers is not a substantial change.

2. The trial court's order concluded, in an alternative holding, that the breath test results were admissible as evidence resulting from a search incident to Gelzer's arrest, regardless of whether he validly consented to the breath test. For the following reasons, we vacate the trial court's order and remand for further consideration in light of this opinion.

6

The trial court's order cites to *Birchfield v. North Dakota*, __ U. S. __ 136 SCt 2160, 2177-2184 (IV) (B) - (C) (195 LEd2d 560) (2016), for the assertion that the breath test given by Gelzer is valid as a search incident to an arrest for drunk driving and is admissible despite the reading of the improper implied consent warning. In *Birchfield*, supra, the Supreme Court of the United States held that the Fourth Amendment to the United States Constitution permits warrantless breath tests as searches incident to arrests for drunk driving. Id. at 2184 (C) (3).

However, at the time the trial court considered Gelzer's motion to suppress (and at the time Gelzer filed his notice of appeal in this case), the Supreme Court of Georgia had not yet issued its decision in *Olevik v. State*, 302 Ga. 228, 234 (2) (b) (806 SE2d 505) (2017). In *Olevik*, our Supreme Court determined that a breath test provided by a DUI suspect after having been read the Georgia implied consent warning was not subject to analysis under the Fourth Amendment, but rather was subject to a self-incrimination analysis under the Fifth Amendment and Article I, Section I, Paragraph XVI of the Georgia Constitution. Id. at 232-246 (2). Under that provision of the Georgia Constitution, "a suspect in such circumstances is protected from compelled acts of self-incrimination, which includes protection against being compelled to submit to a breath test given after receiving the implied consent

7

warning. Thus, a defendant has a constitutional right to refuse such testing." *Yeong Sik Oh v. State*, 345 Ga. App. 729, 736 (815 SE2d 95) (2018). Our Supreme Court in *Olevik*, supra, went on to state that "whether a defendant is compelled to provide self-incriminating evidence in violation of Paragraph XVI is determined under the totality of the circumstances." *Olevik*, supra. at 251-252 (3) (b).

> The voluntariness of a consent to a breath test is determined by such factors as
>
> the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.

(Citations omitted.) *Olevik*, supra at 251 (3) (b). Accord *Yeong Sik Oh*, supra. "Just as the voluntariness of consent to search includes an assessment of the psychological impact of all the factors on a defendant, a significant factor in a due process inquiry is whether a deceptive police practice caused a defendant to confess or provide an incriminating statement." (Citations omitted.) Id.

Because the trial court's order expressly stated that it did not make an analysis of the totality of the circumstances surrounding Gelzer's breath test, we vacate the trial court's denial of Gelzer's motion to suppress the evidence and remand the case

8

for further consideration of those factors. See, e. g., *Davis v. State*, 332 Ga. App. 488, 490 (773 SE2d 442) (2015) (remand required due to trial court's failure to consider, when denying defendant's motion to suppress results of blood alcohol test, whether the totality of the circumstances showed that defendant's consent was given freely and voluntarily).

*Judgment vacated and case remanded with direction. McFadden, P. J., and Rickman, J., concur*.