**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 17, 2019**

# In the Court of Appeals of Georgia

A18A1521. WOOTEN v. THE STATE.

BROWN, JUDGE.

Following a jury trial, Charles Wooten was convicted of possession of methamphetamine, possession of less than one ounce of marijuana, and theft by receiving stolen property. Wooten filed a motion for new trial, which the trial court denied. On appeal, Wooten challenges the sufficiency of the evidence supporting his convictions. For the reasons that follow, we affirm Wooten's convictions for possession of methamphetamine and marijuana. However, we reverse Wooten's conviction for receipt of stolen property for lack of evidence.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence

sufficiency and does not weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Williams v. State*, 333 Ga. App. 879, 879 (777 SE2d 711) (2015). So viewed, the record shows that on May 13, 2016, officers from the Dade County Sheriff's office responded to a location in Sand Mountain. Wooten had called authorities about a possible temporary protection order ("TPO"), but dispatch reported that Wooten was not making any sense. When he arrived on the scene, the investigating officer could hear loud noises coming from inside Wooten's mobile home, which sounded "like a loud scream or just seemed like somebody was screaming come on in here, come up here." Wooten refused to heed the officers' instructions to exit his home, and officers did not approach the residence due to "[o]fficer safety."

While another officer stayed at the front of the home, the investigating officer went to the rear of the residence, looked through a window, and noticed Wooten sitting in a recliner. When Wooten spotted the investigating officer, he stood up, put his hands up, and stated that he had a gun, although it was not loaded. The investigating officer then stepped back and drew his weapon. Wooten reached down and pulled up the gun with his fingers. Although the investigating officer could see that the cylinder was open, it was not clear whether the gun was loaded. The

2

investigating officer instructed Wooten to drop the gun, which he did, and then other officers entered the residence via the front door and proceeded to detain and handcuff Wooten.

Wooten was sweating and appeared to be having trouble breathing, so the officers called for an ambulance in the event that he was experiencing a medical issue. The investigating officer loosened the handcuffs after Wooten complained that they were too tight. Wooten also asked for two bottles of water from the refrigerator. While in the kitchen to get the water, the investigating officer noticed rolling papers with a green leafy substance that he recognized as marijuana in plain view on the kitchen counter next to the refrigerator. After being shown the marijuana and rolling papers, Wooten informed the officers that they could not search his home.

A detective with the drug task force obtained a search warrant for Wooten's residence. Wooten told the detective that his ex-wife, Janet Wooten,[1] lived in the residence part-time and she used the master bedroom and bathroom. Wooten advised the detective that he used the guest bedroom and bathroom. During his search of the home, the detective found a size nine-and-a-half boot in Wooten's bedroom closet, which contained a box with a methamphetamine pipe inside. Officers also retrieved

---

[1] Janet Wooten died prior to trial, during the summer of 2017.

a pill bottle with Wooten's son's name from a closet in Wooten's bedroom. Wooten, however, told the detective that his son did not live in the house. The detective found a torch commonly used to smoke methamphetamine beside a sink in the guest bathroom used by Wooten. In that same bathroom, the detective also found several pill bottles, including (1) one with the name "Janet Wooten," which contained a partially smoked marijuana cigarette; (2) one with no name that had a small bag of marijuana and a marijuana pipe inside; and (3) one with the name "Janet Wooten," which contained a baggy of methamphetamine. The detective found a second methamphetamine pipe in the living room behind a coffee table that was within reach of the recliner where Wooten had been seated when officers first arrived at the house. A search of Wooten's truck yielded a gun in the center console that had been reported stolen. The detective also found a pair of tennis shoes in size nine and a half in Wooten's truck with $17,000 cash stuffed inside.

Based on the foregoing, a grand jury indicted Wooten on a number of charges including possession of methamphetamine, possession of less than an ounce of marijuana, and theft by receiving stolen property. At trial, Jacqueline Wooten, Wooten's daughter-in-law, testified that she owned a gun. Ms. Wooten noticed that the gun was missing in August 2015, when she returned from a vacation after her

4

house burned down. Ms. Wooten told detectives about the missing gun and officially reported it stolen approximately a month later. Ms. Wooten testified that her father-in-law was not amongst the several people at her house in the immediate aftermath of the fire.

The jury ultimately convicted Wooten of possession of methamphetamine, possession of less than one ounce of marijuana, and theft by receiving stolen property.[2] The trial court sentenced Wooten to a total term of ten years to be served on probation. Wooten filed a motion for new trial, which the trial court denied following a hearing. The instant appeal followed.

1. Wooten asserts that the evidence was insufficient to support his drug convictions because the State failed to show he was in actual or constructive possession of the methamphetamine or marijuana found inside his home. Specifically, he highlights that his ex-wife still lived in the home part-time and there was no evidence to establish who placed the marijuana on the kitchen counter. Moreover, Wooten notes that the methamphetamine was found in the guest bathroom in a pill bottle with his ex-wife's name. According to Wooten, although he used that bathroom, there is no indication that he had exclusive access to the bathroom.

_____

[2] The State nolle prossed the remaining counts in the indictment.

Where, as here, the State provides no direct evidence of actual possession of a controlled substance, a conviction may be sustained with proof of constructive possession. *Jones v. State*, 339 Ga. App. 95, 97-98 (1) (a) (791 SE2d 625) (2016). To prove constructive possession, the State is required to show that a person, though not in actual possession, "knowingly has both the power and intention at a given time to exercise dominion or control over" the drugs. (Citation and punctuation omitted.) Id. at 98 (1) (a). The jury may infer the defendant's "power" from his or her access to the drugs, while they may look to the surrounding circumstances to determine whether the defendant had the requisite "intention." *Castillo v. State*, 288 Ga. App. 828, 830 (655 SE2d 695) (2007). See also *Mask v. State*, 309 Ga. App. 761, 763 (2) (711 SE2d 348) (2011) (constructive possession may be proven by circumstantial evidence).

Generally, a finding of constructive possession "cannot rest [solely] upon the person's spatial proximity to the object." *Feliciano v. State*, 302 Ga. App. 328, 330 (690 SE2d 680) (2010); see also *Hodges v. State*, 277 Ga. App. 174, 174 (626 SE2d 133) (2006) ("Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction.") (citation omitted). Nevertheless, "[i]f the State presents evidence that a defendant owned or controlled premises where contraband was found, it gives rise

to a rebuttable presumption that the defendant possessed the contraband." (Citation and punctuation omitted.) *Bailey v. State*, 294 Ga. App. 437, 439-440 (1) (669 SE2d 453) (2008). And while this presumption may be rebutted by showing that others had access to the premises, the equal-access doctrine "applies to rebut the presumption of possession only where the *sole* evidence of possession of contraband found on the premises is the defendant's ownership or possession of the premises." (Citation and punctuation omitted; emphasis in original.) Id. at 440 (1). Significantly, however, so long as there is "slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question of fact regarding constructive possession remains within the domain of the trier of fact." (Citation and punctuation omitted.) *Prather v. State*, 293 Ga. App. 312, 313 (1) (667 SE2d 113) (2008).

Here, the State presented ample evidence of Wooten's constructive possession of the methamphetamine and marijuana found inside his home. In addition to showing that Wooten lived at the residence in question, the State adduced further evidence including marijuana and rolling papers found in plain view in the kitchen; two pipes used to smoke methamphetamine that were found in the residence, one next to the recliner where Wooten had been seated when officers arrived at the scene and a second pipe in a boot belonging to Wooten in his bedroom; and a torch commonly

7

used to smoke methamphetamine found in the bathroom used by Wooten. Although Wooten counters that the pill bottle containing methamphetamine had his ex-wife's name on it, the pill bottle was found in the bathroom that Wooten admitted to officers he used, along with other drug paraphernalia. And "[r]esolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court." (Citation omitted.) *Taylor v. State*, 267 Ga. App. 588, 590 (600 SE2d 675) (2004).

In sum, given Wooten's failure to rebut the presumption that he was in possession of the contraband found in his home, combined with the other evidence detailed above, the jury was authorized to find that he was in constructive possession of the drugs. Accordingly, we affirm Wooten's convictions for possession of methamphetamine and marijuana.

2. Wooten next argues that there was insufficient evidence to sustain his conviction for theft by receiving stolen property because the State failed to meet its burden to show that he knew or should have known that the gun found in his truck was stolen. We agree.

Under OCGA § 16-8-7 (a), "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property

which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner." "Proof of possession, alone, of recently stolen property is not sufficient to establish the essential element of the offense of theft by receiving stolen property that the possessor knew or should have known that the property was stolen." *Wells v. State*, 268 Ga. App. 62, 62-63 (1) (601 SE2d 433) (2004). Guilty knowledge "may be inferred from circumstances, where the circumstances would excite suspicion in the minds of ordinarily prudent persons." (Citation and punctuation omitted.) Id. at 63 (1). See also *Stacey v. State*, 292 Ga. 838, 840 (1) (b) (741 SE2d 881) (2013). However, "[k]nowledge that a gun was stolen cannot be inferred even when the defendant bought a gun on the street at a reduced price, or when the gun was labeled for law enforcement use." (Citations omitted.) *Stacey*, 292 Ga. at 840 (1) (b). Nor can such knowledge be inferred when "there is only evidence that [the defendant] found a gun that had been reported stolen." Id.

Applying these principles, we find that the evidence in this case showed no more than Wooten's possession of a stolen handgun, and the State failed to establish additional circumstances from which a jury could rationally infer that Wooten knew or should have known that the gun was stolen. Here, the owner of the handgun

testified that she discovered the gun was missing in August 2015, after her house burned down in a fire. The investigating officer testified that the same gun was later recovered during a search of Wooten's truck. The State, however, did not offer any other evidence regarding the gun, including proof that Wooten knew or should have known that the gun was stolen. See *Stacey*, 292 Ga. at 840 (1) (b). Because the record before us sheds no light on Wooten's knowledge of the provenance of the handgun, we find it insufficient to enable a rational trier of fact to find Wooten guilty beyond a reasonable doubt of theft by receiving stolen property. Accordingly, we reverse Wooten's conviction for theft by receiving stolen property.

*Judgment affirmed in part and reversed in part. Miller, P. J., and Goss, J., concur.*