**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 13, 2020**

# In the Court of Appeals of Georgia

A20A0514. IN THE INTEREST OF G. M. W., a child.

COLVIN, Judge.

G. M. W. was adjudicated delinquent on charges of misdemeanor obstruction, giving a false name to a law enforcement officer, possession of a handgun by a person under 18 years of age, and misdemeanor theft by receiving stolen property.[1] G. M. W. argues on appeal that (1) the trial court erred in denying his motion to suppress following an unlawful search of his person and backpack and (2) that there was insufficient evidence to support his adjudication for misdemeanor obstruction, for misdemeanor theft by receiving a stolen firearm, and for misdemeanor giving a false name to a law enforcement officer. For the reasons set forth below, we affirm the

---

[1] The juvenile court did not find G. M. W. delinquent on a second count of obstruction of an officer.

denial of G. M. W.'s motion to suppress, reverse the adjudication of delinquency for theft by receiving a stolen weapon, and affirm the juvenile court's adjudication on the remaining charges.

By agreement between the defense and the State, the trial court combined the hearing on the motion to suppress[2] with G. M. W.'s adjudicatory hearing. Viewed in the light most favorable to support the juvenile court's findings of delinquency[3] and its ruling on the motion to suppress,[4] the evidence at that hearing showed that at around 10:30 a. m. on a weekday, May 9, 2019, two City of Newnan police officers were on patrol when they observed G. M. W., who was 15-years-old and wearing a school-type backpack, and another male, who appeared to the officers to be school age, walking in a shopping area. Because there had been a number of recent car

_____

[2] G. M. W. moved to suppress all evidence seized in connection with the two encounters with police, which included the gun.

[3] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *In the Interest of T. T.*, 282 Ga. App. 527, 528 (639 SE2d 538) (2006) ("[T]he standard of review on appeal in a case of adjudication of delinquency of a juvenile is the same as that for any criminal case") (citation and punctuation omitted).

[4] See *State v. Rosenbaum*, 305 Ga. 442, 449 (2) (826 SE2d 18) (2019) (In reviewing a ruling on motion to suppress, this Court construes the evidence "most favorably to the upholding of the trial court's findings and judgment") (citation and punctuation omitted).

2

break-ins involving juveniles in the area, the officers decided to initiate a "citizen encounter" with the two young men to determine if they were cutting school. One of the officers (the "First Officer") spoke with G. M. W., while the other officer (the "Second Officer") spoke with his companion. G. M. W. told the First Officer that his name was "Brandon Smith," gave a false birth date, told them that he attended a certain school, and said that his school hours did not begin until the afternoon. G. M. W. asked the First Officer several times if he was being detained, and the officer replied that he was just asking questions and asked why G. M. W. was making that difficult. Then, while the First Officer was checking the information provided, G. M. W. asked the Second Officer if he was being detained, and that officer told him he was being held until the officers finished their investigation. After the First Officer was unable to verify the name and date of birth G. M. W. provided, the officers allowed the two young men to walk away. This entire encounter lasted four to five minutes.

Afterward, the school's resource officer called the First Officer to report that there was no one by the name of Brandon Smith who attended the school. The police officers then decided to re-initiate contact with G. M. W., whom they located in another part of the shopping area. This second contact occurred about eight to ten

minutes after the first one ended. The officers advised G. M. W. that the information he had given appeared to be false. After they radioed for a fingerprint scanner to identify him, he gave the officers his correct name and date of birth. He also told them that he was on probation and wearing an ankle monitor. At that point in time, the officers believed that they had probable cause to arrest G. M. W. for giving false information. The Second Officer asked G. M. W. for permission to search his backpack, but G. M. W. declined to give his consent. When the officers announced they were going to frisk G. M. W., he became agitated and began to move away from them. Each officer held one of G. M. W.'s arms so he would not flee, and he became "extremely irate" and continued to attempt to get away. As the Second Officer explained, he kept tensing up "as if he was trying to pull away" from his grip, causing the Second Officer to place him on the ground and handcuff him. At that point, G. M. W. told the officers that he had a pistol in his backpack. The First Officer retrieved the weapon, and when he ran the serial number, it came back as stolen.

Based on this evidence, the juvenile court denied the motion to suppress, finding no Fourth Amendment violation, and further found G. M. W. to be delinquent on the misdemeanor counts of obstruction of the Second Officer, giving false

information to a law enforcement officer, possession of a handgun by a person under the age of 18, and theft by receiving stolen property.

1. *Motion to Suppress*. We review the trial court's denial of G. M. W.'s motion to suppress under the following principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *State v. Rosenbaum*, 305 Ga. at 449 (2). Moreover, "an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court. We must focus on the facts found by the trial court *in its order*, as the trial court sits as the trier of fact." (Citation omitted; emphasis in original). *Williams v. State*, 301 Ga. 60, 61 (799 SE2d 779) (2017).

> Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we

5

must apply the law ourselves to the material facts. This includes legal determinations based upon the totality of the circumstances.

(Citation omitted.) *Oh v. State*, 345 Ga. App. 729, 730 (815 SE2d 95) (2018).

Applying these principles, we turn next to the applicable law to guide our review.

> The Supreme Court of the United States has set forth . . . three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. And, thus, in order to analyze a defendant's claim that he was the victim of an illegal police detention, a court must first categorize the police-citizen encounter at issue.

(Punctuation and footnote omitted.) *State v. Robusto*, 348 Ga. App. 579, 582 (824 SE2d 37) (2019). See also *Terry v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968).

(a) *First Encounter.* As the juvenile court found, the first encounter between police and G. M. W. began as a first-tier encounter when the First Officer asked for G. M. W.'s name, date of birth, and school information. "In a first-tier encounter, police may approach citizens, ask for identification, ask for consent to search, and

otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave." (Citation and punctuation omitted.) *Sexton-Johnson v. State*, __ Ga. App. __ at *7 (1) (Case No. A19A2066, decided Feb. 26, 2020). "In such an encounter, a citizen is completely free to exercise their right to ignore the police and leave. Indeed, a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter." (Citation and punctuation omitted.) Id. Although the First Officer did not directly answer G. M. W.'s question about whether he was being detained, there is no evidence that he ever conveyed the message that G. M. W. was not free to leave. See *In the Interest of C. B.*, 353 Ga. App. 383, 384 (837 SE2d 544) (2020) (officer's initial contact with juvenile was a first-tier encounter where officer pulled over to ask juvenile his name because of recent car break-ins). It was during this lawful, first-tier encounter that G. M. W. gave the officer false identifying information.

However, "[e]ncounters can progressively escalate, and a first-tier encounter becomes a second-tier detention once a reasonable person no longer believes that he [or she] is free to leave." (Citation and punctuation omitted.) *Sexton-Johnson*, __ Ga. App. __ ,*7-8 (1). See also *Dougherty v. State*, 341 Ga. App. 120, 124-25 (799 SE2d

7

257) (2017) ("[A]n encounter escalates from a first-tier consensual interaction to a second-tier investigatory detention only when the individual is 'seized' by the officer, i.e., only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the individual.") (citation and punctuation omitted). When the Second Officer informed G. M. W. that he was being detained until the officers completed their investigation, the matter was elevated to a second-tier encounter. See *Interest of C. B.*, 353 Ga. App. at 384-385 (first-tier encounter escalated to second-tier when officer told juvenile to stay in front of his car). Although the officers had no articulable suspicion to detain G. M. W., the detention was very brief. The entire first encounter lasted only four to five minutes and the detention did not occur until after G. M. W. had already given his identifying information to the First Officer and thus was even shorter. The officers then let the two young men go without further questioning or search. Under these circumstances, we find that no evidence was seized as a result of this brief investigatory detention during the first encounter.[5]

---

[5] The State asserts that it nevertheless had the authority to detain G. M. W. under OCGA § 20-2-698, which provides,

Any peace officer may assume temporary custody, during school hours,

8

(b) *Second Encounter*. Evidence was seized, however, during the second encounter when the First Officer conducted a warrantless search of G. M. W.'s backpack. "Warrantless searches are unreasonable under the Fourth Amendment unless they fall within a well established exception to the warrant requirement." *Lewis v. State*, 350 Ga. App. 143, 148 (1) (d) (828 SE2d 386) (2019) (citing *Arizona v. Gant*, 556 U. S. 332, 338 (II) (129 SCt 1710, 173 LE2d 485) (2009)). "[S]uch exceptions include searches conducted pursuant to consent, the existence of exigent circumstances, and searches incident to a lawful arrest." (Citations omitted.) *Caffee v. State*, 303 Ga. 557, 560 (2) (814 SE2d 386) (2018). The State bears the burden of showing that the requirements of an exception to the search warrant requirement have

---

of any child subject to compulsory school attendance who is found away from home and who is absent from a public or private school or a home study program without a valid written excuse from school officials or from the parent or guardian in charge of the home study program.

See also OCGA § 20-2-690.1 (a) ("Mandatory attendance in a public school, private school, or home school program shall be required for children between their sixth and sixteenth birthdays"). G. M. W. counters that the 2014 revisions to the juvenile code undercut police authority in this regard, citing OCGA §§ 15-11-2 and 15-22-381. However, we need not reach this issue, as no further intrusion occurred and no evidence was seized as a result of the brief detention in the first encounter.

been met." (Citations omitted.) *Kennebrew v. State*, 304 Ga. 406, 409 (1) (819 SE2d 37) (2018).

The officers' second interaction with G. M. W. began as a second-tier encounter based on information received after the first encounter ended. This information indicated that G. M. W. may have provided false information to police. "In [the second] level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity." (Footnote omitted.) *Walker v. State*, 299 Ga. App. 788, 790 (1) (683 SE2d 867) (2009).

As the juvenile court found, when the officers approached G. M. W. the second time, they had an objective and particularized basis for suspecting that the misdemeanor crime of giving false information had occurred. They were thus authorized to detain G. M. W. to investigate the matter further, and G. M. W., in effect, confessed to the crime by providing his correct name and date of birth, giving the officers probable cause to arrest him.

At this point, after the officers sought and were denied permission to search G. M. W.'s backpack, they announced their intention to frisk G. M. W. The officers were

authorized to search him at that time because they had probable cause to arrest him. *Caffee*, 303 Ga. at 563 (2) (b) (Where probable cause to arrest exists, warrantless search fell "within the recognized search-incident-to-arrest exception to the warrant requirement, even though the search preceded the arrest"). As the United States Supreme Court has explained, the exception for a search incident to arrest

> derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. . . . [W]e [previously] held that a search incident to arrest may only include the arrestee's person and the area within his immediate control – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

(Citation and punctuation omitted.) *Gant*, 556 U. S. at 338-339. Here, G. M. W. was wearing the backpack, and thus it was within his immediate control. However, pretermitting whether a lawful search incident to arrest would have encompassed the backpack, the officers did not conduct a search at that time, because G. M. W. became agitated and began to move away, causing the officers to restrain him. When G. M.

11

W. resisted the officers' hold, the Second Officer put him on the ground and handcuffed him.[6]

After these events, G. M. W. told the officers he had a gun in his book bag, and the First Officer retrieved it. Although G. M. W. was in handcuffs and could no longer reach the gun, we find that his statement was sufficient to authorize the police to secure the weapon for their own safety before transporting the backpack. Compare *Kennebrew*, 299 Ga. at 870 (2) (a) (1) (search not incident to arrest where backpacks seized from third party's dorm room after defendant had already been handcuffed and removed from the room and they were not searched until six days later); *Huff v. State*, 346 Ga. App. 120, 124 (816 SE2d 304) (2018) (where defendant was handcuffed and law enforcement officers had exclusive control of backpack at the time of the search *and* no reason to think that it contained any evidence related to crime, search-incident-to-arrest exception did not apply).

Accordingly, considering the totality of the circumstances, we find that the evidence at issue was not seized as a result of any violation of G. M. W.'s Fourth Amendment rights, and the juvenile court properly denied the motion to suppress.

---

[6] During this time, the matter escalated into a third-tier, custodial encounter. See *Cromartie v. State*, 348 Ga. App. 563, 568 (2) (824 SE2d 32) (2019).

2. *Sufficiency of the Evidence*. G. M. W. argues that the evidence was insufficient to support his convictions for obstruction, theft by receiving, and giving false information beyond a reasonable doubt.

When an appellate court evaluates the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

(a) *Obstruction.* Under OCGA § 16-10-24 (a), "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." G. M. W. was charged with obstructing the Second Officer in violation of this statute "by pulling away from police officers during his arrest[.]" "The essential elements of OCGA § 16-10-24 (a) obstructing or hindering law enforcement officers are: that the act constituting

13

obstruction or hindering was knowing and willful and that the officer was lawfully discharging his official duties." (Citation and punctuation omitted.) *Taylor v. State*, 349 Ga. App. 185, 186 (1) (825 SE2d 552) (2019). Here, the evidence showed that the officers were acting in the lawful discharge of their duties and that G. M. W. moved away from the officers to avoid a lawful search incident to arrest and then became irate and tensed his muscles as if trying to pull away from their grip. We find this evidence sufficient to support his the finding of delinquency for obstruction. See, e. g., *Cobble v. State*, 297 Ga. App. 423, 424 (1) (677 SE2d 439) (2009) (evidence sufficient to support conviction where defendant resisted, in part, by pulling from side to side when officers placed their hands on his arms).

(b) *Theft by Receiving.* "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner." OCGA § 16-8-7 (a).[7] However, "[p]roof of possession, alone, of recently stolen property is not sufficient to establish the essential element of the offense of theft by receiving stolen property that the

---

[7] This subsection also defines "receiving" as "acquiring possession or control or lending on the security of the property." OCGA § 16-8-7 (a).

14

possessor knew or should have known that the property was stolen." (Citation and punctuation omitted.) *Wooten v. State*, 348 Ga. App. 408, 412-13 (2) (823 SE2d 98) (2019). See also *Stacey v. State*, 292 Ga. 838, 840 (1) (b) (741 SE2d 881) (2013).

Here, G. M. W. was charged with unlawfully retaining a stolen handgun. The only evidence regarding G. M. W.'s acquisition of the gun was his statement that he had obtained the gun from an individual the night before. However, "knowledge that a gun was stolen cannot be inferred even when the defendant bought a gun on the street . . . ." (Citation and punctuation omitted.) *Stacey*, 292 Ga. at 840 (1) (b). Although the State points to G. M. W.'s attempts to flee as "guilty knowledge" that the gun was stolen, as a minor, G. M. W.'s mere possession of a gun was a crime and thus, we find that while his attempts to escape may reflect guilty knowledge of the gun's presence in his backpack, this evidence does not establish beyond a reasonable doubt that he knew the gun was stolen. Because the evidence only showed that G. M. W. was in possession of a stolen weapon, which is insufficient to support his conviction for theft by receiving, id. at 840 (1) (b), we reverse the adjudication of delinquency on this charge.

(c) *Giving False Information*. G. M. W. was charged with giving a false name, "to wit: Brandon Smith[,]" to the First Officer. Under OCGA § 16-10-25, "[a] person

15

who gives a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity or birthdate is guilty of a misdemeanor." The evidence shows that G. M. W. first gave the officers a false name and birthdate, as he later demonstrated when he provided the correct information. We find the evidence sufficient to support his the finding of delinquency for giving false information. See, e. g., *Ceballos v. State*, 345 Ga. App. 714, 717 (1) (815 SE2d 89) (2018).

*Judgment affirmed in part and reversed in part. Reese, P. J., and Markle, J., concur.*