**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 4, 2018**

# In the Court of Appeals of Georgia

A18A0073. HUFF v. THE STATE.

REESE, Judge.

Jamarcus Huff appeals from the trial court's denial of his motion to suppress evidence of a handgun that was found in a backpack after he was arrested for battery (family violence) and criminal trespass.[1] For the reasons set forth, infra, we reverse the trial court's ruling.

Viewed in favor of the trial court's ruling on the motion to suppress,[2] the record shows that on January 10, 2017, at approximately 4:00 a.m., David Kelley, an Athens-Clarke County patrol officer, responded to a third-party 911 call that L. M. had been beaten up by her boyfriend. Kelley arrived at the apartment in question, where Huff

---

[1] See OCGA §§ 16-5-23.1 (f); 16-7-21 (a).

[2] See *State v. Carr*, 322 Ga. App. 132 (744 SE2d 341) (2013).

was lying on the couch. When Kelley knocked on the door, Huff got up and, while wearing a backpack, went into a bedroom. Huff returned without the backpack and answered the door. Huff told Kelley that no one had been arguing or fighting and allowed Kelley in to see L. M. and a baby, both of whom appeared to be asleep.

Kelley started walking back to the patrol car to leave, but the third-party caller arrived on the scene. Kelley took a picture of a text message on the caller's phone that the caller reportedly had received from L. M.'s phone number. The photo was introduced at the hearing and showed three text messages received at 3:15 a.m.: "[Caller,] help me [J]ay just beat me up real bad with [the baby] in my arm please when u get this come here[.]" "I can[']t talk[.]" "Come get us please[.]"

Kelley went back to the apartment to wake up L. M. As he approached the door, he heard yelling coming from inside the apartment. L. M. answered the door and tried to hide the right side of her face from Kelley's view. However, Kelley observed a large knot near L. M.'s right eye and forehead and blood around her lips. L. M. would not tell Kelley what had happened, only that she wanted to leave and that she had sent the texts so that the caller would pick her up. Kelley observed a "busted" cell phone on the floor, and L. M. indicated the damage had happened that night. L. M. acknowledged it was her phone and that she had texted the caller with it.

2

When Kelley asked Huff how L. M. had been injured, Huff responded that Kelley should ask her. Huff asked if he could get his backpack out of the bedroom. Kelley retrieved Huff's backpack from the bedroom, and Huff put it on his back. Kelley met with another officer on the scene, and they decided to arrest Huff for battery (domestic violence). The officers removed the backpack from Huff's back "for officer safety[ ]" and placed him in handcuffs before escorting him to the patrol car, where Kelley searched him. Another officer searched Huff's backpack "[f]or officer safety and drug-related fruits of the crime[ ]" and discovered a handgun.

Kelley was wearing a body camera during the encounter. At the suppression hearing, Huff introduced into evidence a copy of the video recording beginning with Huff's arrest. In the video, Huff can be seen wearing a backpack and sitting on a chair inside the apartment. Officers stood him up and put his hands behind his back to handcuff him, slid the backpack off his back, and told him he was being arrested for domestic violence.

An officer then picked up the backpack from the floor, asking if it belonged to Huff and telling him that he would not be able to return to the apartment. Huff asked L. M. to give the backpack to his sister, which L. M. agreed to do. Instead, the officers took Huff and his backpack outside to the patrol car, telling Huff that they

were bringing the backpack because "it was on his person when he was arrested." The walk to the patrol car took over one minute as Huff and the officers walked down several steps from the apartment door, crossed through a courtyard, walked through apartment buildings opposite the apartment in question, and walked down a sidewalk before searching Huff. An officer then placed the backpack on the trunk of the car and searched the bag.

The trial court denied Huff's motion to suppress the handgun found in the backpack, finding that "Officer Kelley was justified to search the backpack for a weapon while [Huff] was still close enough to potentially grab the backpack." Thus, the court ruled that the search-incident-to-arrest exception to the warrant requirement applied. We granted discretionary review.

"Unless clearly erroneous, the trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted on appeal. However, where controlling facts are not in dispute, such as those facts discernible from a videotape, [the appellate court's] review is de novo."[3] With these guiding principles in mind, we turn now to Huff's specific claim of error.

---

[3] *Hourin v. State*, 301 Ga. 835, 843 (3) (804 SE2d 388) (2017) (citations and punctuation omitted); see also *Williams v. State*, 302 Ga. 474, 480 (III) (807 SE2d 350) (2017).

Huff argues that the trial court erred in denying his motion to suppress because Kelley illegally seized his backpack by removing it from his person and possession before he searched Huff or placed him in handcuffs. Huff contends that the State showed no reasonable necessity to seize the property as Huff specifically requested the backpack be left with L. M., who explicitly stated that she would take charge of the property and deliver it to Huff's sister.

Further, the search-incident-to-arrest warrant exception did not apply, Huff contends, because the search of the backpack occurred several minutes after the officers gained exclusive control over it and moved it to a separate location.

The trial court did not address whether the State was authorized to seize the backpack. The State presented no evidence of any connection between the backpack and Huff's arrest and no showing that seizure of the backpack was reasonably necessary.[4] Moreover, the post facto justification by Kelley that he was searching the backpack for "drug-related fruits of the crime[ ]" is unsupported by the record. Huff

---

[4] See *Mitchell v. State*, 178 Ga. App. 244, 245-246 (3) (342 SE2d 738) (1986); see also *State v. McCarthy*, 288 Ga. App. 426, 428 (2) (654 SE2d 239) (2007) (discussing a visitor's right to privacy in his personal belongings).

was placed under arrest for battery, and the State did not articulate any suspicion that Huff was involved in drug-related activity.[5]

Huff relies on *Kennebrew v. State*,[6] in support of his argument that the trial court erred in finding the search valid. In that case, the Supreme Court of Georgia cited the United States Supreme Court's discussion of the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement in *Arizona v. Gant*:[7]

> The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. [W]e [have] held that a search incident to arrest may only include the arrestee's person and the area within his immediate control — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. . . . *If there is no possibility that an arrestee could reach into the area that law*

---

[5] See OCGA § 17-5-1 (a) (3) ("When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the persons's immediate presence for the purpose of [d]iscovering or seizing fruits of the crime for which the person has been arrested[.]").

[6] 299 Ga. 864 (792 SE2d 695) (2016).

[7] 556 U. S. 332 (129 SCt 1710, 173 LE2d 485) (2009).

*enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.*[8]

The court went on to note that:

[a]lthough the [United States] Supreme Court's decisions have vacillated to some extent on the scope of the exception in the context of persons arrested in vehicles, it has been settled law for decades that in other contexts — like the arrest of a person in a residence — the police may search only the arrestee's person, personal property immediately associated with his person (like a cigarette pack in his pocket), and the area within his reaching distance. . . . Warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the search is remote in time or place from the arrest, or no exigency exists. *Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.*[9]

---

[8] *Kennebrew*, 299 Ga. at 869-870 (2) (a) (1) (citations and punctuation omitted; emphasis supplied).

[9] Id. at 870 (2) (a) (1) (citations and punctuation omitted; emphasis supplied).

In *Kennebrew*, the defendant was handcuffed and removed from a college dorm room before the officers seized two backpacks from the room.[10] The officers then waited another six days before searching the backpacks.[11] Thus, the court concluded that the search was clearly not incident to the defendant's arrest.[12] The court reversed the defendant's conviction, holding that the defendant had shown that trial counsel provided ineffective assistance of counsel by failing to seek suppression of the evidence.[13]

Although the facts in this case are not as extreme, we agree with Huff that *Kennebrew* demanded a ruling in his favor. The officers removed the backpack from Huff's vicinity immediately prior to Huff's arrest and maintained it in their exclusive possession as they carried it to the patrol car where it was ultimately searched. Contrary to the trial court's finding that the search was justified because Huff was "close enough to potentially grab the backpack," the law enforcement officers had exclusive control of Huff's backpack, and Huff was handcuffed at the time of the

---

[10] *Kennebrew*, 299 Ga. at 869 (2) (a) (1).

[11] Id.

[12] Id. at 871 (2) (a) (1).

[13] Id. at 874 (2) (c).

search. Thus, there was no longer any danger that Huff could gain access to the backpack to seize the weapon or destroy evidence.[14] As noted above, the State did not argue, nor was there any evidence to show, that the officers had any reason to believe that the backpack contained anything related to the crime for which he was arrested.[15] Based on the facts which are discernable from the video recording, we conclude, as a matter of law, that the State failed to meet its burden under OCGA § 17-5-30 (b) to prove that the warrantless search of Huff's backpack was lawful.

*Judgment reversed. Barnes, P. J., and McMillian, J., concur.*

---

[14] See *Kennebrew*, 299 Ga. at 870 (2) (a) (1); see also *Satterfield v. State*, 256 Ga. 593, 597 (4) (351 SE2d 625) (1987) (search of a house after the only occupants of the house had been placed in police cars was not a search incident to an arrest); *Canino v. State*, 314 Ga. App. 633, 638-639 (2) (725 SE2d 782) (2012) (search of suspect's car was not authorized as a search incident to arrest when the suspect was handcuffed and unable to access the inside of the car prior to the search).

[15] See *State v. McCarthy*, 288 Ga. App. 426, 427-428 (1) (654 SE2d 239) (2007) (trial court did not err in holding that a search of a suspect's bag was not valid as incident to his arrest where the grounds for the arrest warrant were not part of the record and the State did not argue that the officers had any reason to believe that the bag contained anything related to the crime).