

**ATTORNEYS FOR APPELLANT**

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal
Appeals
Indianapolis, Indiana

**ATTORNEY FOR APPELLEE**

John M. Haecker
Squiller & Hamilton, LLP
Auburn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Plaintiff*,<br><br>v.<br><br>Justin Crager,<br>*Appellee-Defendant*. | October 25, 2018<br><br>Court of Appeals Case No.<br>18A-CR-671<br><br>Appeal from the DeKalb Superior<br>Court<br><br>The Honorable Kevin P. Wallace,<br>Judge<br><br>Trial Court Cause No.<br>17D01-1707-F4-10 |

**Brown, Judge.**

[1] The State appeals the trial court's order granting a motion to suppress filed by Justin Crager. The State raises one issue which we revise and restate as whether the trial court erred in granting Crager's motion to suppress. We reverse and remand.

*Facts and Procedural History*

[2] On July 24, 2017, the State charged Crager with: Count I, dealing in methamphetamine as a level 4 felony; Count II, possession of methamphetamine as a level 6 felony; and Count III, possession of paraphernalia as a class C misdemeanor and alleged that he had a prior conviction that would enhance the offense to a class A misdemeanor.

[3] On January 27, 2018, Crager filed a motion to suppress and alleged that evidence was obtained in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

[4] On February 21, 2018, the court held a hearing on Crager's motion. Garrett Police Sergeant Kyle LaMotte testified that he was on routine patrol on July 21, 2017, was aware that Crager had an active arrest warrant as "at some point [he] was on [his] computer and saw the active warrant," observed Crager operating a motorcycle, and stopped him for the warrant. Transcript at 8. He testified that when he was in the process of stopping Crager, he radioed central communications to confirm the warrant and advise that he was with Crager.

He further testified that Crager was going to park at a gas station as he pulled in behind Crager.

[5] According to Sergeant LaMotte's testimony, Crager "got off his motorcycle and started walking towards the door of the gas station" with a backpack on his back. *Id.* at 10. Sergeant LaMotte yelled Crager's name, and Crager stopped and went to him. Sergeant LaMotte asked Crager to place his backpack on the ground, Crager did so, and Sergeant LaMotte placed him in handcuffs for the active arrest warrant. When asked if he had confirmed the warrant at that point, Sergeant LaMotte answered: "I, I'm unsure at what point they came back with that." *Id.* Sergeant LaMotte indicated that he arrested Crager based on his belief that he had an active warrant.

[6] Sergeant LaMotte determined the backpack had a locked compartment and asked Crager for the key. Crager did not want to give him the key but told him that the key was on a key ring. He testified that if Crager had not given him the key then he would have broken the lock. When asked why he would have broken the lock, he answered:

> Because for one it was a search incident to arrest and he had it on his back at the time that I had encountered him. And for two, he was under arrest. He was gonna be in my patrol car along with the book bag. So not only for the search incident to arrest but officer safety purposes, I had no way of knowing what the book bag contents were. You know, there could have been a bomb in there for all I know. I don't know. It was going to be going into a secure facility, the DeKalb County Jail so I felt it was my responsibility to make sure there was nothing dangerous in the bag as well.

*Id.* at 11-12.  Sergeant LaMotte unlocked the backpack and found two separate bags of crystal methamphetamine, a bag of clean and unused ziplock bags, a jar that contained a white liquid which he believed likely contained methamphetamine,[1] a meth pipe, a digital scale, a cell phone, and a syringe.

[7]  Sergeant LaMotte testified that the stop was recorded by his in-car video and audio camera, and that there was full audio but the visual part could not be seen due to the angle of the vehicles.  He testified that an inventory search was conducted on the towed motorcycle and no evidence was discovered relating to the case.

[8]  When asked on cross-examination if, at the point the stop occurred, he had reviewed a warrant for Crager's arrest approximately an hour before the arrest, Sergeant LaMotte answered: "Approximately, yeah." *Id.* at 19.  He indicated that he had asked Crager if there were drugs in the backpack, and Crager stated that he was not giving consent to search.  He testified that he asked Crager to place the backpack on the ground so that he could effectively handcuff him.  He stated: "At the time that I said, Justin, come to me, I knew that he had the warrant, meaning that he was not free to go.  At that time, he was wearing the book bag." *Id.* at 24.  He indicated that Crager had to go to jail when he observed him and knew that he had a warrant.  Crager's counsel then asked: "So that was [the] decision that you knew right from the get-go?" *Id.* at 29.

---

[1] On cross-examination, Sergeant LaMotte testified about the jar and stated: "It was found with other meth so I mean it leads one to believe it contained meth but I, again, I wasn't for sure."  Transcript at 34.

Sergeant LaMotte answered: "Yeah. He had to go to jail. He had a warrant." *Id.* He testified that he could not have left the backpack with the motorcycle because it was his responsibility to protect Crager's property and secure his possessions.

[9] On redirect examination, Sergeant LaMotte testified that he was previously a confinement officer and booked people in at the DeKalb County jail, that he would thoroughly search a backpack, that if it was locked he would break it open, and that he was positive that the backpack would have been searched if he had not searched it at the scene.

[10] On March 1, 2018, the trial court granted Crager's motion to suppress. Specifically, the order states:

> The State seeks to justify the warrantless search as a search incident to a lawful arrest. But the circumstances here do not support the claim that the backpack was in control of Mr. Crager at the time of the arrest. Mr. Crager complied with the officer's request to place the backpack on the ground, and put his hands behind his back to be handcuffed. As such, there was no concern for officer safety or destruction of the contents of the backpack at the time of the search.
>
> Nor did the State show any other justification for the warrantless search of the backpack, i.e., consent or written policy regarding inventory searches. The contents of the backpack were seized in violation of the Fourth Amendment and Article I, Section 11 of the Indiana Constitution and are suppressed.

Appellant's Appendix Volume II at 112.

## *Discussion*

[11] The issue is whether the trial court erred in granting Crager's motion to suppress. "In reviewing a trial court's motion to suppress, we determine whether the record discloses 'substantial evidence of probative value that supports the trial court's decision.'" *State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011) (quoting *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006)). "We do not reweigh the evidence, but consider 'conflicting evidence most favorably to the trial court's ruling.'" *Id.* (quoting *Quirk*, 842 N.E.2d at 340). "When the State appeals from a negative judgment, as here, it 'must show that the trial court's ruling on the suppression motion was contrary to law.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind. 2008), *reh'g denied*). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[12] The State raises arguments under: (A) the Fourth Amendment of the United States Constitution; and (B) Article 1, Section 11 of the Indiana Constitution.

### A. *Fourth Amendment*

[13] The State argues that the backpack was a part of Crager's person and there was no need for additional justification beyond the fact of arrest to search the backpack pursuant to the search incident to arrest exception. Crager argues that the search of his backpack was not a search incident to arrest because the search occurred while he was detained in handcuffs prior to his arrest on the warrant.

He argues that he was handcuffed when the search occurred, there is a lack of evidence that the backpack was in his reach, and any search of the backpack would not have revealed any further evidence of the offense for which the warrant had been issued.

[14] The Fourth Amendment to the United States Constitution provides in pertinent part: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. If a search is conducted without a warrant, the State bears the burden to show that one of the well-delineated exceptions to the warrant requirement applies. *M.O. v. State*, 63 N.E.3d 329, 331 (Ind. 2016).

[15] We begin with a review of cases from the United States Supreme Court. In *Riley v. California*, 134 S. Ct. 2473, 2482, (2014), the Court stated that "[a]s the text makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness."'" (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943 (2006)). The Court addressed whether the police may, without a warrant, search digital information on a cell phone seized from an individual who had been arrested, and reviewed three related precedents that set forth the rules governing searches incident to arrest. 134 S. Ct. at 2483-2484. Specifically, the Court stated:

> The first, *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969), laid the groundwork for most of the existing search incident to arrest doctrine. Police officers in that case arrested Chimel inside his home and proceeded to search his entire three-bedroom house, including the attic and garage. In

particular rooms, they also looked through the contents of drawers. *Id.*, at 753-754, 89 S. Ct. 2034.

The Court crafted the following rule for assessing the reasonableness of a search incident to arrest:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.*, at 762-763, 89 S. Ct. 2034.

The extensive warrantless search of Chimel's home did not fit within this exception, because it was not needed to protect officer safety or to preserve evidence. *Id.*, at 763, 768, 89 S. Ct. 2034.

Four years later, in *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973), the Court applied the *Chimel* analysis in the context of a search of the arrestee's person. A police officer had arrested Robinson for driving with a revoked license. The officer conducted a patdown search and felt an object that he could not identify in Robinson's coat pocket. He removed the object, which turned out to be a crumpled cigarette package, and opened it. Inside were 14 capsules of heroin. *Id.*, at 220, 223, 89 S. Ct. 2034.

The Court of Appeals concluded that the search was unreasonable because Robinson was unlikely to have evidence of the crime of arrest on his person, and because it believed that extracting the cigarette package and opening it could not be

justified as part of a protective search for weapons. This Court reversed, rejecting the notion that "case-by-case adjudication" was required to determine "whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." *Id.*, at 235, 89 S. Ct. 2034. As the Court explained, "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Ibid.* Instead, a "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Ibid.*

The Court thus concluded that the search of Robinson was reasonable even though there was no concern about the loss of evidence, and the arresting officer had no specific concern that Robinson might be armed. *Id.*, at 236, 89 S. Ct. 2034. In doing so, the Court did not draw a line between a search of Robinson's person and a further examination of the cigarette pack found during that search. It merely noted that, "[h]aving in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it." *Ibid.* A few years later, the Court clarified that this exception was limited to "personal property . . . immediately associated with the person of the arrestee." *United States v. Chadwick*, 433 U.S. 1, 15, 97 S. Ct. 2476, 53 L.Ed.2d 538 (1977) (200-pound, locked footlocker could not be searched incident to arrest), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L.Ed.2d 619 (1991).

The search incident to arrest trilogy concludes with [*Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009)], which analyzed searches of an arrestee's vehicle. *Gant*, like *Robinson*, recognized that the *Chimel* concerns for officer safety and evidence preservation underlie the search incident to arrest exception. *See*

556 U.S., at 338, 129 S. Ct. 1710. As a result, the Court concluded that *Chimel* could authorize police to search a vehicle "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S., at 343, 129 S. Ct. 1710. *Gant* added, however, an independent exception for a warrantless search of a vehicle's passenger compartment "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Ibid.* (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring in judgment)). That exception stems not from *Chimel*, the Court explained, but from "circumstances unique to the vehicle context." 556 U.S., at 343, 129 S. Ct. 1710.

*Riley*, 134 S. Ct. at 2483-2484. The Court held that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Id.* at 2488-2489.

[16] We next review *Garcia v. State*, 47 N.E.3d 1196 (Ind. 2016), a decision in which the Indiana Supreme Court discussed the search incident to arrest exception. The Court held that the opening of a pill container during the course of a pat-down search incident to arrest constituted a reasonable search. *Garcia*, 47 N.E.3d at 1197. The Indiana Supreme Court stated:

> We continue to be persuaded by *Robinson* regarding the degree of suspicion necessary to conduct a search incident to arrest. The United States Supreme Court set out a clear standard in *Robinson*. "A custodial arrest of a suspect based on probable cause is a reasonable intrusion . . . that intrusion being lawful, a search incident to the arrest requires no additional justification." 414 U.S. at 235, 94 S. Ct. 467. We similarly conclude that it is "the lawful arrest which establishes the authority to search." *Id.*

*Id.* at 1200.

[17] To the extent Crager asserts that the backpack was not in his control at the time of his arrest, which he claims occurred when the warrant was confirmed, we disagree. Sergeant LaMotte testified that he was aware that Crager had an active arrest warrant, that he had reviewed an arrest warrant for Crager approximately an hour before the arrest, that he stopped Crager for the warrant, that at the time he ordered Crager to approach he knew that Crager had an arrest warrant, and that he arrested Crager based on the active warrant. The timing of when Sergeant LaMotte received confirmation of the warrant from central communications does not determine when Crager was under arrest.

[18] The record reveals that Crager was wearing the backpack at the time Sergeant LaMotte stopped him and initiated an arrest. Sergeant LaMotte asked Crager to place the backpack he was wearing on the ground. Sergeant LaMotte searched the backpack at the time or very near to the time of Crager's arrest. We also note Sergeant LaMotte's testimony that he could not have left the backpack with the motorcycle because it was his responsibility to protect Crager's property and secure his possessions. We conclude that the backpack was immediately associated with Crager and that the search was reasonable under the circumstances and did not violate Crager's rights under the Fourth Amendment. *See Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001) (holding that a duffle bag was lawfully searched incident to arrest where the defendant removed the bag from his shoulder and placed it at his feet, an officer stopped the defendant near the bag and then placed the defendant under arrest

at that same location, and the bag was searched almost immediately), *reh'g en banc denied*, *cert. denied*, 535 U.S. 955, 122 S. Ct. 1358 (2002); *State v. Mercier*, 883 N.W.2d 478, 492-493 (N.D. 2016) (upholding a search where the defendant had the backpack in his actual possession immediately preceding his lawful arrest); *State v. Brock*, 355 P.3d 1118, 1123 (Wash. 2015) (holding that the search incident to arrest exception applied when the defendant wore a backpack at the very moment he was stopped by an officer); *People v. Cregan*, 10 N.E.3d 1196, 1209 (Ill. 2014) (holding that officers were allowed to search a bag pursuant to a search of the person incident to arrest where the bag was in the actual physical possession of defendant at the time of his arrest and was a personal effect immediately associated with his person), *reh'g denied*, *cert. denied*, 135 S. Ct. 410 (2014).[2]

B. *Article 1, Section 11*

[19] Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable

---

[2] Crager cites *Kennebrew v. State*, 792 S.E.2d 695 (Ga. 2016), and *Huff v. State*, 816 S.E.2d 304 (Ga. 2018). In *Kennebrew*, the appellant "had already been handcuffed and removed from the dorm room when the police seized his backpacks, and they were not searched until six days later, far away in both time and place from [the appellant's] arrest." 792 S.E.2d at 701. The court held that trial counsel's failure to pursue suppression of evidence found in backpacks based on his misunderstanding of the search incident to arrest doctrine was deficient performance. *Id.* at 702. In *Huff*, the officers removed a backpack from the defendant immediately prior to Huff's arrest, took the backpack outside despite Huff's request that another person give the backpack to his sister, and maintained it in their exclusive possession as they carried it to the patrol car where it was ultimately searched. 816 S.E.2d at 307. The court agreed with the defendant that *Kennebrew* demanded a ruling in the defendant's favor. Here, the backpack was searched contemporaneously with Crager's arrest. We find *Kennebrew* and *Huff* distinguishable.

cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[20] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently. *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). "When a defendant raises a Section 11 claim, the State must show the police conduct 'was reasonable under the totality of the circumstances.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1205-1206 (Ind. 2008), *reh'g denied*). Generally, "[w]e consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[21] Applying the factors articulated in *Litchfield*, we first consider "the degree of concern, suspicion, or knowledge that a violation has occurred." *Litchfield*, 824 N.E.2d at 361. In analyzing this factor, the Indiana Supreme Court has recently held that it had "previously recognized that 'once a lawful arrest has been made, authorities may conduct a "full search" of the arrestee for weapons or concealed evidence. No additional probable cause for the search is required, and the search incident to arrest may "involve a relatively extensive exploration of the person."'" *Garcia*, 47 N.E.3d at 1200 (quoting *Edwards v. State*, 759 N.E.2d 626, 629 (Ind. 2001) (citing *Robinson*, 414 U.S. at 227, 235, 94 S. Ct.

467) (internal quotation and citation omitted)). The record reveals that Sergeant LaMotte was aware that Crager had an active arrest warrant at the time he stopped Crager and at that time Crager was wearing the backpack.

[22] Regarding the degree of intrusion, Crager was under arrest and had placed the backpack he was wearing on the ground. Sergeant LaMotte searched Crager's backpack and opened a lock using a key to access a compartment of the backpack. We cannot say the degree of intrusion was high.

[23] With respect to the extent of law enforcement needs, the Indiana Supreme Court has held:

> When the pill container was discovered on Garcia's person, it is insignificant that Officer Robinett acknowledged that the container could contain legal or illegal substances or that he did not subjectively view Garcia or the container as dangerous. First, we have continually reiterated that "[a] search incident to a valid arrest is lawful regardless of what it reveals." *Farrie* [*v. State*], [255 Ind. 681, 683, 266 N.E.2d 212, 214 (1971)]. Second, the objective reasonableness of the search is controlling, not Officer Robinett's subjective views. Even under a brief stop and frisk, it is well established that the reasonableness of an officer's suspicion turns upon whether "the totality of the circumstances presented a particularized and *objective* basis for the officer's belief . . . ." *State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014) (internal citation and quotation omitted) (emphasis added). Under an objective standard, we agree that "unknown physical objects may always pose risks, no matter how slight, during the tense atmosphere of a custodial arrest." *Riley v. California*, —— U.S. —— —, 134 S. Ct. 2473, 2485, 189 L.Ed.2d 430 (2014). In fact, these risks continue to some extent into the ensuing time thereafter the arrest. For example, a risk may still exist while police are transporting an arrestee to a secure location and during booking

of that individual at the police station. *See Chambers v. State*, 422 N.E.2d 1198, 1203 (Ind. 1981) (upholding the validity of a search incident to arrest, regardless of the fact that the search did not occur at the exact time and place of the arrest, but occurred once the police arrived at the police station with the defendant.)

47 N.E.3d at 1203. The Court also stated: "we see no basis in the present circumstances why an independent warrant should be required to search an item already lawfully seized." *Id.* The Court further stated: "When taking an individual into custody, officer safety is a primary concern. Small and seemingly innocuous items have the potential to pose a threat. We see no reason to delay the officer's ability to inspect such items once they have already been lawfully seized." *Id.* This factor weighs in favor of finding the search to be reasonable.

[24] Under the totality of the circumstances, we conclude that the search of the backpack was reasonable and did not violate Crager's rights under Article 1, Section 11 of the Indiana Constitution.

## *Conclusion*

[25] For the foregoing reasons, we reverse the trial court's grant of Crager's motion and remand for proceedings consistent with this opinion.

[26] Reversed and remanded.

Altice, J., and Tavitas, J., concur.