A05A1777. AUTRY v. THE STATE.
(626 SE2d 528)

MIKELL, Judge.

Ralph Autry was convicted of trafficking in methamphetamine and was sentenced to 20 years, including 15 in confinement. He appeals the trial court's order denying his motion to suppress.

"On appeal from a denial of a motion to suppress, we construe the evidence in favor of the trial court's ruling, and the trial court's application of law to undisputed facts is subject to de novo review."[1] So viewed, the evidence adduced at the hearing on the motion to suppress shows that Oconee County Sheriff's Deputy Barry D. Mallek initiated a traffic stop of a cargo van in Watkinsville on September 25,

[1] (Punctuation and footnote omitted.) *Salmeron v. State*, 273 Ga. App. 55 (614 SE2d 177) (2005).

2002, at 3:00 p.m. because it was raining, and the van did not have any exterior lights illuminated as required by OCGA § 40-8-20. A man named Michael Williams was the driver, and Autry was sitting in the front passenger seat. Mallek approached the passenger side of the van, and Autry opened the door.

Mallek immediately noted that both men exhibited signs consistent with being under the influence of methamphetamine. Autry's mouth was dry, his jaw was "tight," and his movements were "animated," meaning that he displayed muscle rigidity. In addition, both men had dilated pupils. Mallek also observed fresh injection sites on their arms consistent with intravenous drug use. According to Mallek, some of the sites on Autry's arm had not yet coagulated, and the rest were in various stages of healing.

Mallek asked Williams for his driver's license and scanned the interior of the van. At that point, Mallek observed drug paraphernalia and evidence of drug usage on the floor of the front seat: bloodied cotton balls, a blackened spoon with crystalline residue, a cloth band approximately 18 inches long, and an empty folded piece of plastic, which appeared to have crystal residue in it.

Williams stated that the police had taken his license, and he showed Mallek a traffic citation. Mallek asked him to step out of the van. Mallek testified that Williams's gait was unsteady, his motor skills were jerky, his speech was a "bit rapid," and his eyes were "slightly dilated." Mallek testified that, based on his training and experience in having made "thousands" of arrests of persons who were under the influence of drugs, both defendants appeared to be under the influence of methamphetamine. Williams was arrested for driving without a license and driving under the influence of methamphetamine.

Mallek called a tow truck because he decided it was unsafe for Autry to drive. Mallek then testified that he "began to conduct a search or inventory of . . . the interior of the vehicle." During the search, Mallek discovered two briefcases with combination locks sitting on a back seat that ran perpendicular to the front seat of the van. The first case was unlocked. When Mallek opened it, he saw a hypodermic syringe, 30 or 40 plastic baggies, and electronic scales. According to Mallek, Autry stated that the syringe was his and that he was a diabetic. However, he was unable to name the type of insulin he used. The second case was locked, and Williams gave Mallek the combination. When Mallek opened it, he found a sock or pouch stuffed with two baggies containing large chunks of methamphetamine, as

well as baggies and scales. At that point, both men were arrested for trafficking in methamphetamine.[2]

In denying the motion to suppress, the trial court determined that the stop was lawful because Mallek's observation of the van operating in the rain without headlights gave him articulable reasonable suspicion to believe that the driver was violating OCGA § 40-8-20. Further, the court held that probable cause existed for Williams's arrest for DUI and that the search of the van was valid as incident to that lawful arrest.[3] Accordingly, despite Mallek's testimony that he entered the van for the primary purpose of conducting an inventory search, the court deemed it unnecessary to determine whether an inventory search was proper.[4] Finally, the court held that the search of the briefcases was permissible pursuant to *New York v. Belton*,[5] in which the United States Supreme Court held that in a search incident to a lawful arrest, police officers may search the entire passenger compartment of the automobile and any closed containers therein.[6]

Although Autry enumerates three errors on appeal from this order, he primarily contends that Williams's arrest for DUI was invalid, so that if, as the trial court concluded, the search of the van was conducted incident thereto, it was invalid as well. We find it unnecessary to address the validity of Williams's arrest, however, because the search of the van was lawful under an independent basis — the automobile exception to the Fourth Amendment's warrant requirement.

> Where a law enforcement officer has probable cause to believe that a vehicle (as opposed to a particular container within the vehicle), while in transit, contains contraband; i.e., where the objective facts known to the officer would justify issuance of a search warrant authorizing that a vehicle be searched, the "automobile exception," *Carroll v. United States*, 267 U. S. 132[, 153-154] (45 SC 280, 69 LE 543) (1925), to the warrant requirement of the Fourth Amendment applies, and a warrantless search of the entire

---

[2] It was established at trial that the chunks of methamphetamine weighed 35.82 grams and 15.64 grams, respectively. Williams pleaded guilty to possession of methamphetamine with intent to distribute and testified against Autry.

[3] See OCGA § 17-5-1 (a) (4).

[4] See *State v. Heredia*, 252 Ga. App. 89, 91 (3) (555 SE2d 91) (2001) (authorizing police to search passenger compartment of a car, as well as closed containers therein, incident to lawful arrest of car's occupant).

[5] 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981).

[6] Id. at 460-461.

vehicle is not unconstitutional, including all containers and packages that may contain such contraband. *United States v. Ross*, 456 U. S. 798[, 821-822] (102 SC 2157, 72 LE2d 572) (1982).[7]

In the case at bar, the objective facts known to Mallek after he lawfully stopped the van gave him probable cause to believe that the van contained contraband. These facts included the evidence of drug usage and drug paraphernalia on the floor of the front seat, the fresh "track" marks on the arms of both men, including puncture wounds on Autry's arm that had not yet coagulated, and the suspects' exhibition of symptoms of recent drug use. The warrantless search of the vehicle was therefore lawful under the automobile exception to the warrant requirement,[8] and the denial of the motion to suppress is upheld under the theory that a judgment right for any reason will be affirmed.[9]

Moreover, as the trial court correctly determined, the fact that Mallek classified the search of the van as an inventory search is not determinative.[10] Under the Fourth Amendment, courts look to objective facts known to the officer, and his opinion as to the type of search he conducted does not preclude the existence of probable cause to conduct the search, which is determined by the courts. "[T]he scope of the fourth amendment is determined objectively, and not by the subjective conclusions of the law enforcement officer."[11] The rationale for this rule is that "[e]venhanded law enforcement is best achieved

---

[7] (Footnote omitted.) *Love v. State*, 254 Ga. 697, 698-699 (334 SE2d 173) (1985).

[8] See *Love*, supra at 699; *State v. Duncan*, 253 Ga. App. 830, 831 (560 SE2d 720) (2002) (warrantless search was reasonable even absent exigent circumstances; driver was arrested, and handcuffed, and keys were secured); *Benton v. State*, 240 Ga. App. 243, 245 (2) (522 SE2d 726) (1999) (automobile exception does not require exigent circumstances); *Westfelt v. State*, 192 Ga. App. 791, 792 (386 SE2d 542) (1989); *McKinney v. State*, 184 Ga. App. 607, 609-610 (2) (362 SE2d 65) (1987). Compare *State v. Lejeune*, 276 Ga. 179, 183 (2) (576 SE2d 888) (2003) (automobile exception inapplicable where suspect's car was legally parked in his residential parking space and he did not have access to it); *State v. Massa*, 273 Ga. App. 596, 597-598 (615 SE2d 652) (2005) (automobile exception inapplicable although officer saw suspected marijuana and rolling papers in baggy protruding from ashtray where suspect's unoccupied vehicle was parked on a remote dirt drive).

[9] *Benton*, supra at 245 (1).

[10] See *Durden v. State*, 199 Ga. App. 397, 399 (405 SE2d 50) (1991) ("[w]e need not decide whether an inventory search was proper since the warrantless trunk search had a probable cause basis").

[11] *United States v. Roy*, 869 F2d 1427, 1432-1433 (II) (11th Cir. 1989) (subjective belief of Coast Guard officers that they did not have probable cause to board vessel did not invalidate boarding, where facts objectively supported a finding of probable cause, which is determined by the courts).

by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer."[12]

Finally, because the search was lawful under the automobile exception to the warrant requirement, the search of the briefcases was authorized without a showing of individualized probable cause.[13]

> When there is probable cause to search for contraband in a car, it is reasonable for police officers ... to examine packages and containers without a showing of individualized probable cause for each one. A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are "in" the car, and the officer has probable cause to search for contraband *in* the car.[14]

It follows that the trial court properly denied the motion to suppress the evidence seized from the van and the briefcases.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 20, 2006.

*Daniels & Rothman, Jeffery A. Rothman,* for appellant.
*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney,* for appellee.

---

[12] (Punctuation omitted.) *State v. Almand*, 196 Ga. App. 40, 41 (395 SE2d 609) (1990), citing *Horton v. California*, 496 U. S. 128, 138 (110 SC 2301, 110 LE2d 112) (1990). See also *Whren v. United States*, 517 U. S. 806, 812 (II) (A) (116 SC 1769, 135 LE2d 89) (1996) (officer's motive in making traffic stop does not invalidate what is otherwise "objectively justifiable behavior under the Fourth Amendment"); *New York v. Quarles*, 467 U. S. 649, 655-656 (104 SC 2626, 81 LE2d 550) (1984) (availability of "public safety" exception to requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence does not depend upon subjective motivation of the individual officers involved); *United States v. Simmons*, 172 F3d 775, 778 (II) (11th Cir. 1999) (probable cause not dependent upon officer's motive in making traffic stop); *Roy*, supra.

[13] See *State v. Selph*, 261 Ga. App. 541, 543 (583 SE2d 212) (2003).

[14] (Emphasis in original.) *Wyoming v. Houghton*, 526 U. S. 295, 302 (II) (119 SC 1297, 143 LE2d 408) (1999) (upholding search of passenger's purse for contraband pursuant to automobile exception after drug paraphernalia was found in driver's pocket). See also *Ross*, supra at 821-822; *McKinney*, supra at 610 (3).