**FIFTH DIVISION
MCFADDEN, P. J.,
RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 8, 2019**

# In the Court of Appeals of Georgia

A18A2041. CROMARTIE v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Fred Lee Cromartie was convicted of and sentenced[1] for the offenses of trafficking in cocaine (OCGA § 16-13-31 (a)); possession of marijuana with the intent to distribute (OCGA § 16-13-30 (j) (1)); driving without a license (OCGA § 40-5-20 (a)); improper lane change (OCGA § 40-6-123 (d)); and failure to maintain lane (OCGA § 40-6-48 (1)). In the course of the proceedings below, the trial court denied Cromartie's motion to suppress drug evidence found in the rental car he was driving when he was stopped for traffic violations; denied Cromartie's motion for a directed verdict of acquittal on all counts; and denied Cromartie's motion for new trial, in which Cromartie had reiterated his suppression and directed verdict arguments.

---

[1] Cromartie was also convicted of the offense of possession of more than an ounce of marijuana, but this conviction merged with his other marijuana conviction for sentencing purposes.

On appeal, Cromartie argues that the trial court erred in denying his motion for directed verdict because the evidence was insufficient to authorize his convictions, but we find that the evidence was sufficient. He also argues that the trial court erred in denying his motion to suppress drug evidence that was found during a traffic stop, but we find the trial court's ruling was supported by sufficient evidence. Finally, he argues that the trial court erred in denying his motion for new trial, but we find this argument fails because his claims regarding the sufficiency of the evidence and his motion to suppress lack merit. So we affirm.

1. *Sufficiency of the evidence.*

At trial, Cromartie moved for a directed verdict of acquittal on every count of the indictment against him on the ground that the evidence presented at trial was insufficient. The trial court denied the motion. In his motion for new trial, Cromartie again challenged the sufficiency of the evidence, and the trial court again rejected his challenge. Cromartie argues that these rulings were error because the evidence was insufficient to authorize his convictions. On appellate review, we apply "the standard espoused in *Jackson v. Virginia*, [443 U. S 307, 319 (99 SCt 2781, 61 LE2d 560) (1979),] to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict." *Lewis v. State*, 296 Ga. 259, 261 (3) (765 SE2d

2

911) (2014) (citation and punctuation omitted). As detailed below, we find that the evidence was sufficient, so the trial court did not err in denying either the motion for directed verdict or the motion for new trial on sufficiency grounds.

Viewed most favorably to the prosecution, the evidence showed that on December 2, 2015, law enforcement officers saw a rental car with a Florida tag that was being driven erratically, changing lanes without signaling, veering outside of its lane, and speeding. Cromartie was driving the rental car. A second vehicle, also with a Florida tag, was being driven very closely behind the first car and mimicking that car's actions, changing lanes whenever the first car changed lanes. Cromartie's brother was driving the second vehicle. The manner in which the two vehicles were being driven and the fact that one was a rental car suggested to the law enforcement officers that the vehicles might be transporting drugs or otherwise engaged in illegal activity.

Law enforcement officers stopped both vehicles. Cromartie's brother consented to a search of the second vehicle, which yielded no contraband, and he and his passenger were released with warnings and left the scene. Cromartie, however, was arrested for giving false information to a law enforcement officer when, after being

asked by an officer for his driver's license, he provided a copy of his brother's license instead. The officers handcuffed Cromartie and placed him in the back of a patrol car.

Subsequently, a drug-sniffing dog was brought to the scene, walked around the outside of the rental car, and indicated that drugs were inside the car. The officers then searched the car and found vacuum-sealed bags of cocaine and marijuana in a duffel bag in its cargo area and two bundles of cash, totaling $1901, in the car's glove box. The cocaine was a mixture of 67 percent purity and weighed 53.9868 grams. The marijuana weighed 15.575 ounces. An officer testified that these amounts of marijuana and cocaine were not indicative of personal use.

(a) *Drug offenses.*

As to the counts on which he was sentenced — trafficking in cocaine and possession of marijuana with intent to distribute — Cromartie argues that he was entitled to a directed verdict of acquittal because there was insufficient evidence to show that he either possessed those drugs or had the necessary intent to be convicted of those offenses.[2] A person commits the felony offense of trafficking in cocaine, in

---

[2] In his appellate brief, Cromartie also asserts that he was entitled to a directed verdict of acquittal on the charge of possession of more than an ounce of marijuana, but the trial court's "denial of [his] motion for directed verdict on th[at] count is moot. [Cromartie] was not sentenced on th[at] count." *Nelson v. State*, 224 Ga. App. 623, 624 (4) (481 SE2d 605) (1997) (citation omitted).

violation of OCGA § 16-13-31 (a) (1), by being "in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine[.]" And a person violates OCGA § 16-13-30 (j) (1) by, among other ways, "possess[ing] with intent to distribute marijuana."

(i) *Possession*.

Contrary to Cromartie's argument, the evidence supported a finding that he was in possession of the bags of cocaine and marijuana found in the cargo area of the car he was driving when the law enforcement officers stopped him. Although Cromartie did not own the car, the fact he was driving it gave rise to a rebuttable presumption that he possessed the drugs found within it. See *Navarro v. State*, 293 Ga. App. 329, 331 (667 SE2d 125) (2008); *Johnson v. State*, 195 Ga. App. 577, 578 (394 SE2d 359) (1990). "Whether the evidence presented at trial supported or rebutted that presumption was a question for the jury." *Navarro*, supra (citation omitted).

Cromartie argues that other persons could have had access to the rental car and, therefore, the jury was not authorized to find the drugs were in his possession. He cites the rule that the rebuttable presumption discussed above "does not apply if it can be shown that a defendant has not been in possession or control [of the automobile] for a period before discovery of contraband or where others have had equal access to

5

the automobile." *Ledesma v. State*, 251 Ga. 487 (1) (306 SE2d 629) (1983) (citation omitted). Instead, under such circumstances, "the prior possession or equal access rule would demand an acquittal. However, if there is additional evidence of possession of contraband by the accused — either circumstantial or direct, other than mere ownership, use, or possession of the vehicle, then an issue is made for the jury." *Mackey v. State*, 234 Ga. App. 554, 555 (507 SE2d 482) (1998) (citation and punctuation omitted).

Assuming without deciding that the prior possession or equal access rule applies to the facts of this case, it does not demand a different outcome because there is additional evidence of Cromartie's possession of the cocaine and marijuana — the testimony of several law enforcement officers who witnessed Cromartie and his brother driving and stated that the manner of their driving suggested that they were engaged in an illegal activity such as drug transportation or trafficking. Given this evidence, the equal access rule did not demand an acquittal, and the jury was authorized to find that the presumption that Cromartie possessed the drugs in the car had not been rebutted. See *Mackey*, 234 Ga. App. at 555.

(ii) *Intent.*

6

In his brief, Cromartie asserts that the state "failed to meet its burden of proof as to intent," but he offers no further argument or citation to authority supporting this assertion. The evidence recited above authorized a finding that Cromartie had the requisite intent to be convicted for the drug offenses. Criminal intent may be shown through circumstantial evidence. See *Conner v. State*, 268 Ga. 656, 657 (1) (492 SE2d 669) (1997). Cromartie did not have to know the specific amount of the cocaine in his possession to commit the offense of trafficking under the version of OCGA § 16-13-31 (a) applicable here. See *Scott v. State*, 295 Ga. 39, 41-42 (2) (757 SE2d 106) (2014). And the testimony of a law enforcement officer that the amount of marijuana in Cromartie's possession did not indicate personal use was evidence of his intent to distribute it. The state laid a foundation for that testimony by eliciting testimony about his experience and training in drug enforcement. See *Jones v. State*, 304 Ga. App. 109, 111 (1) (a) (695 SE2d 665) (2010).

(b) *Traffic offenses.*

Although Cromartie's claim that the trial court erred in denying his motion for directed verdict encompasses all of his convictions, he makes no specific argument for why the evidence is insufficient to show he committed the traffic offenses. The evidence set forth above authorized the convictions for the traffic offenses.

2. *Motion to suppress.*

Cromartie argues that the trial court erred in denying his motion to suppress the evidence of the cocaine and marijuana found in the car he was driving, asserting that the evidence was the product of a warrantless search that violated his rights under the Fourth Amendment of the United States Constitution. Cromartie also claims that the trial court erred in denying his motion for new trial, in which he reiterated his argument that the evidence should have been suppressed. We review the trial court's suppression ruling "to determine whether it was clearly erroneous. In doing so, [we] construe[ ] the evidence most favorably to upholding the trial court's findings and judgment and will not disturb the trial court's findings of fact if there is any evidence to support them." *Doleman v. State*, 304 Ga. 740, 743 (2) (__ SE2d __) (2018) (citations and punctuation omitted).

To carry its burden of proving that the search of the car was lawful, in response to Cromartie's motion to suppress, "the [s]tate [was required to] show that it was lawful to detain [Cromartie] until the time the drug dog indicated the presence of drugs." *Dominguez v. State*, 310 Ga. App. 370, 372 (714 SE2d 25) (2011) (citation omitted). In considering the lawfulness of Cromartie's detention, we must keep in mind the "three general classes, or 'tiers,' of police-citizen encounters: (1) verbal

8

communications involving no coercion or detention; (2) brief stops or seizures that require reasonable suspicion; and (3) arrests, which can only be supported by probable cause." *State v. Holt*, 334 Ga. App. 610, 614 (2) (a) (780 SE2d 44) (2015) (citation and punctuation omitted).

Cromartie does not dispute that the evidence authorized the law enforcement officers to instigate the traffic stop — a second-tier encounter — based on a reasonable suspicion that he had committed traffic violations. See *Loveless v. State*, 337 Ga. App. 894, 896-897 (1) (789 SE2d 244) (2016) (officer's observation of traffic violation was valid basis for traffic stop). He argues, however, that the law enforcement officers unreasonably prolonged the traffic stop to await the arrival of the drug dog, which the evidence shows occurred as much as 50 minutes after the stop began. "In order to comply with the Fourth Amendment, an investigative detention cannot be prolonged beyond the time reasonably required to fulfill the purpose of the stop." *Holt*, 334 Ga. App. at 618 (2) (b) (citation and punctuation omitted).

But by the time the drug dog arrived, Cromartie was no longer in a temporary, second-tier encounter, investigative detention. Instead, he was in a third-tier encounter, under arrest for giving false information to a law enforcement officer. See

9

*State v. Norris*, 281 Ga. App. 193, 195 (635 SE2d 810) (2006) ("A third-tier arrest is . . . a full-blown custodial arrest as opposed to a temporary second-tier investigative detention.") (citation omitted). The trial court found that the arrest occurred "not long after he was pulled over," and the evidence supports that finding. See *Thomason v. State*, 268 Ga. 298, 303 (2) (c) (486 SE2d 861) (1997) (person handcuffed and placed in back of patrol car was in custody of law enforcement officers and not free to leave scene); *State v. Holt*, 334 Ga. App. at 615 (1) (a) (test for determining if suspect is under custodial arrest is whether reasonable person in suspect's position would have thought detention was not temporary). So, "not long after [Cromartie] was pulled over," his second-tier investigative detention came to an end. Cromartie does not argue that the officers lacked probable cause to arrest him, and the evidence supports a finding that they had probable cause to make the arrest. See OCGA § 16-10-25 (person commits a misdemeanor by giving "a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity or birthdate"). See also *Loveless*, 337 Ga. App. at 897 (1). Consequently, Cromartie was lawfully detained in a third-tier custodial arrest when the drug dog arrived and indicated the presence of drugs. Compare *Dominguez*, 310 Ga. App. at 372. He cites no authority — and we know of

10

none — imposing the prohibition against unreasonably prolonged detentions to a lawful, third-tier custodial arrest.

Alternatively, Cromartie argues that the search of the car following the drug dog's alert was unlawful because it did not comply with the requirements of a search incident to arrest, an exception to the Fourth Amendment's warrant requirement that "applies only to those situations where 'the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search,' or where 'it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Stroud v. State*, 344 Ga. App. 827, 832 (3) (812 SE2d 309) (2018) (quoting *Arizona v. Gant*, 556 U. S. 332, 343 (III) (129 SCt 1710, 173 LE2d 485) (2009)). But the search did not have to meet the requirements of that exception, because it instead fell within the "automobile exception" to the search-warrant requirement, which permits officers to search a vehicle that is being used on the highways if they have probable cause to believe that it contains contraband. See *State v. Lejeune*, 276 Ga. 179, 183 (2) (576 SE2d 888) (2003); *Autry v. State*, 277 Ga. App. 305, 307-308 (626 SE2d 528) (2006). The drug dog's indication of the presence of drugs gave the officers probable cause to search the car. See *Byers v. State*, 272 Ga. App. 664, 667 (613 SE2d 193) (2005); *Rogers v. State*, 253 Ga. App. 863, 865 (1) (560 SE2d 742)

11

(2002). And the dog's open-air sniff, which preceded its alert, was not a "search" implicating Fourth Amendment rights. *State v. Simmons*, 283 Ga. App. 141, 143 (640 SE2d 709) (2006); *Rogers*, supra at 864-865 (1).

For these reasons, we agree with the trial court that the search that led to the discovery of the cocaine and marijuana did not violate Cromartie's rights under the Fourth Amendment and the trial court did not err in denying the motion to suppress and the motion for new trial on that ground.

*Judgment affirmed. Rickman and Markle, JJ., concur.*